**U.S. COURT OF APPEALS CASE NO. 12-1373, 1374**

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

HONEYWELL INTERNATIONAL INC. and
HONEYWELL INTELLECTUAL PROPERTIES INC.,

Plaintiffs-Appellees,

v.

NOKIA CORPORATION, NOKIA INC., SEIKO EPSON CORPORATION,
ARGUS (also known as Hartford Computer Group Inc.),
TOSHIBA AMERICA, INC., ALL AROUND CO. LTD., BOE-HYDIS
TECHNOLOGY CO. LTD, and PICVUE ELECTRONICS LIMITED,

Defendants,

and

FUJIFILM CORPORATION, FUJIFILM U.S.A., INC., SAMSUNG SDI
AMERICA INC., and SAMSUNG SDI CO. LTD.,

Defendants-Appellants.

Appeals from the United States District Court for the District of Delaware in
consolidated case no. 04-CV-1337, Judge Leonard P. Stark

_____

**DEFENDANTS-APPELLANTS SAMSUNG SDI AMERICA, INC. AND
SAMSUNG SDI CO., LTD.'S _CORRECTED_ NON-CONFIDENTIAL
OPENING APPEAL BRIEF**

Stephen S. Korniczky
skorniczky@sheppardmullin.com
Michael Murphy
mmurphy@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
TEL: (858) 720-8900
FAX: (858) 509-3691

*ATTORNEYS FOR DEFENDANT-APPELLANTS*
*SAMSUNG SDI AMERICA, INC. AND SAMSUNG SDI CO., LTD.*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees Samsung SDI Co., Ltd. and Samsung SDI America, Inc. certify the following:

1. The full name of every party or amicus represented by me is: SAMSUNG DISPLAY Co., Ltd., SAMSUNG SDI America, Inc. and SAMSUNG SDI Co., Ltd.

2. The full name of the real party in interest represented by me is:

   SAMSUNG DISPLAY Co., Ltd., SAMSUNG SDI America, Inc. and SAMSUNG SDI Co., Ltd.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

   SAMSUNG Electronics Co., Ltd.

4. The names of all law firms and partners or associates that appeared for the parties or amicus now represented by us in the trial court or are expected to appear in this court are:

   Sheppard, Mullin, Richter & Hampton LLP:
       Stephen Korniczky, Martin Bader and Michael Murphy;

   Paul, Hastings, Janofsky & Walker LLP :
       Glenn Dassoff, Elizabeth Brann, Anthony DiVincenzo and Ryan Hawkins;

   Potter, Anderson & Corroon LLP:
       Richard Horwitz, Davis Ellis Moore and Philip Rovner.

Dated:  September 19, 2014


/s/*Stephen S. Korniczky*
Stephen S. Korniczky

Attorneys for Defendants-Appellants
SAMSUNG DISPLAY CO., LTD.,
SAMSUNG SDI AMERICA INC. and
SAMSUNG SDI CO., LTD.

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ....................................................................1

JURISDICTIONAL STATEMENT .......................................................................2

STATEMENT OF THE ISSUES ..........................................................................2

STATEMENT OF THE CASE...............................................................................3

STATEMENT OF FACTS .....................................................................................8

I.    BOEING SOUGHT COMPETITIVE BIDS TO DEVELOP AND DELIVER A DISPLAY UNIT FOR ITS COMMERCIAL PASSENGER AIRPLANE...............................................................................8

    A.    Honeywell Demonstrated, Contrary to its "Untenable" Position, The Claimed Two-Lens Array to Boeing.................................9

    B.    Honeywell Commercially Offered The Directional Diffuser Technology to Boeing In Its AIMS Proposal.........................13

II.    HONEYWELL APPLIES FOR A PATENT ON THE CLAIMED TWO-LENS ARRAY WHILE WITHHOLDING ITS COMMERCIAL OFFER TO BOEING. ...................................................................................15

III.    HONEYWELL SUPPRESSED EVIDENCE OF ITS COMMERCIAL ACTIVITY DURING THE LITIGATION. ....................................17

IV.    THE DISTRICT COURT'S DECISION ON FEES. .....................................21

SUMMARY OF THE ARGUMENT ...................................................................26

ARGUMENT ......................................................................................................28

I.    STANDARD OF LAW AND STANDARD OF REVIEW ...........................28

II.    HONEYWELL'S INFRINGEMENT CLAIM WAS BASELESS BECAUSE HONEYWELL KNEW CLAIM 3 WAS INVALID FOR HAVING BEEN OFFERED FOR SALE BEFORE THE CRITICAL DATE..................................................................................................31

A.    The District Court Found, and This Court Upheld, that the AIMS Proposal was a Commercial Offer for Sale As A Matter of Law. ........33

B.    Honeywell Knew It Had Offered A Two-lens Array Embodying Claim 3 To Boeing. ...............................................................................36

C.    Honeywell Litigated Unreasonably and in Bad Faith. .........................38

D.    Honeywell Used This Lawsuit To Leverage An Invalid And Unenforceable Patent to Obtain Over [REDACTED] Dollars From The LCD Industry.....................................................................42

III.   HONEYWELL ATTEMPTED TO SUPPRESS VOLUME IV OF THE AIMS PROPOSAL, OFFERED MISLEADING DISCOVERY RESPONSES, AND SUBMITTED FALSE DECLARATIONS ...................44

A.    Honeywell Failure to Produce Volume IV and Attempted to Mislead the Parties Regarding Its Existence.........................................45

B.    Honeywell Falsely Denied Or Refused To Admit RFAs......................49

C.    Honeywell Submitted an Improper Declaration and Improper Testimony To Obfuscate The Facts Supporting An On-Sale Bar.........51

IV.   HONEYWELL OBTAINED ITS PATENT BY CONCEALING ITS COMMERCIAL ACTIVITY FROM THE USPTO ......................................54

A.    Honeywell Violated its Duty to Disclose Commercial Activity to the USPTO ........................................................................................56

B.    Honeywell Intentionally Withheld Its Commercial Activity From The USPTO. ........................................................................................57

C.    Honeywell's Failure to Inform the USPTO of Its Commercial Activity Renders This Case Exceptional..............................................59

CONCLUSION .......................................................................................61

**CONFIDENTIAL MATERIAL OMITTED**

The material on pages 5, 9-12, 14-15, 21, 24, 26, 34-35, 37-38, 42, 44 and 60 reflects information that Honeywell has designated confidential.  Appellants have sought to have this information unsealed but Honeywell continues to insist that the information is technical and design information constituting trade secrets, confidential research and business information.  The information relates to a 1990 proposal for an integrated in-flight management system purportedly still in use today.

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*A.B. Chance Co. v. RTE Corp.*
854 F.2d 1307 (Fed. Cir. 1988) .........................................................................32

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*
2008 U.S. Dist. LEXIS 54615 (S.D.N.Y 2008)...................................................54

*Brasseler, U.S.A. I.L.P. v. Stryker Sales Corp.*
267 F.3d 1370 (Fed. Cir. 2001) ...................................................................38, 55

*Critikon v. Beckton Dickinson Vascular Access*
120 F.3d 1253 (Fed. Cir. 1997) .........................................................................56

*Eltech Sys. Corp. v. PPG Indus., Inc.*
903 F.2d 805 (Fed. Cir. 1990) .....................................................................28, 39

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*
49 F.3d 1551 (Fed. Cir. 1995) ...........................................................................30

*Highmark, Inc. v. Allcare Health Management Systems, Inc.*
134 S.Ct. (2014)............................................................................................30, 29

*Hughes v. Novi American, Inc.*
724 F.2d 122 (Fed. Cir. 1984) .....................................................................38, 42

*Interspiro USA, Inc. v. Figgie, Int'l Inc.*
18 F.3d 927 (Fed. Cir. 1994) .............................................................................31

*LaBounty Mfg. v. U.S. Int'l Trade Comm'n.*
958 F.2d 1066 (Fed. Cir. 1992) .........................................................................56

*Liafail, Inc. v. Learning 2000, Inc.*
2003 WL 722199 (D.Del. 2003).........................................................................50

*Linear Tech. Corp. v. Micrel, Inc.*
275 F.3d 1040 (Fed. Cir. 2001) .........................................................................33

*Monsanto Co. v. Bayer Bioscience N.V.*
514 F.3d 1229 (Fed. Cir. 2008) .........................................................................54

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
  134 S.Ct. 1749 (2014) ............................... 2, 21, 26, 28, 29, 31, 38, 42, 43, 44, 54

*Paragon Podiatry Lab. V. KLM Labs.*
  984 F.2d 1182 (Fed. Cir. 1993) ............................................................. 55, 56, 57

*Pfaff v. Wells Elecs., Inc.*
  525 U.S. 55 (1998) ................................................................................... 32

*Plumtree Software v. Datamize, LLC*
  473 F.3d 1152 (Fed. Cir. 2006) ............................................................... 32

*Rhenalu v. Alcoa Inc.*
  224 F.Supp.2d 773 (D. Del. 2002) ........................................................... 34

*Scaltech, Inc. v. Retec/Tetra, LLC*
  269 F.3d 1321 (Fed. Cir. 2001) ................................................... 32, 35, 52

*Sensonics, Inc. v. Aerosonic Corp.*
  81 F.3d 1566 (Fed. Cir. 1996) ......................................................... 44, 49

*Shields v. Eli Lilly & Co.*
  895 F.2d 1463,1466 (D.C. Cir. 1990) ...................................................... 30

*Superior Fireplace Co. v. Majestic Prods. Co.*
  270 F.3d 1358 (Fed. Cir. 2001) ............................................................... 29

*Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*
  272 F.3d 600 (D.C. Cir. 2001) ................................................................. 30

<u>Statutes</u>

28 U.S.C. § 1295(a)(1) ................................................................................. 2

28 U.S.C.§ 1338(a) ...................................................................................... 2

35 U.S.C. § 102(b) ....................................................................... 1, 32, 35, 41

35 U.S.C. § 285 ............................................................... 26, 28, 43, 44, 54

Copyright Act, 17 U.S.C. § 505 ................................................................. 29

Other Authorities

37 C.F.R. § 156 ...................................................................................................56

Fed.R.App.P. 28(i).............................................................................................1

FRCP Rule 11 ...................................................................................................39

FRCP Rule 30(b)(6) ..........................................................................................14

## STATEMENT OF RELATED CASES

This appeal arises from the Honorable Leonard P. Stark's final decision denying attorney's fees to Defendant-Appellants Samsung SDI America, Inc. and Samsung SDI Co., Ltd. (collectively "Samsung") (A0001-13), after the Honorable Joseph J. Farnan granted summary judgment of invalidity for violation of the on-sale bar against claim 3 of U.S. Patent No. 5,280,371, entitled "Directional Diffuser for a Liquid Crystal Display" ("the '371 patent"). (A13166-83.) In Appeal No. 2010-1121 to this Court, Plaintiffs-Appellees Honeywell International Inc. and Honeywell Intellectual Properties Inc. (collectively, "Honeywell") appealed from the district court's decision that '371 Patent was invalid under 35 U.S.C. §102(b) for being on sale. On November 1, 2010, this Court affirmed the district court's decision *per curiam. Honeywell Int'l Inc. v. Nikon Corp. (Honeywell I)*, 672 F. Supp. 2d 638 (D. Del. 2009), *aff'd sub nom., Honeywell Int'l. Inc. v. Nokia Corp. (Honeywell II)*, 400 F. App'x 557 (Fed. Cir. 2010) (*per curiam*). (A13184a-c.) No other appeal from this action has been taken to this Court or any other appellate court. There are no known cases pending in this Court or any other court that will directly affect or be affected by this Court's decision in this appeal.[1]

---

[1] This appeal has been consolidated with Appeal No. 2012-1273, by Defendants-Appellants FUJI FILM Corporation and FUJIFILM U.S.A. Inc.'s (now FUJIFILM North American Corporation (collectively, "FUJI"). Pursuant to Fed.R.App.P. 28(i), Samsung hereby joins and incorporates Co-Appellant FUJI's brief.

## JURISDICTIONAL STATEMENT

The District Court for the District of Delaware had jurisdiction pursuant to 28 U.S.C. §1338(a).  This Court has jurisdiction pursuant to 28 U.S.C. §1295(a)(1).  On March 30, 2012, the district court issued a final order denying Samsung's motion for fees.  (A14.)  Samsung timely appealed the district court's ruling.

## STATEMENT OF THE ISSUES

1.    Whether Honeywell's filing and continuation of the litigation in the face of explicit contractual language and knowledge that it had offered to sell the claimed invention of the '371 patent to Boeing renders this case exceptional under the standard set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,  134 S.Ct. 1749 (2014)?

2.    Whether Honeywell's failure to inform the United States Patent and Trademark Office ("the USPTO") of its prior offer to sell the claimed invention to Boeing renders this case exceptional under *Octane*?

3.    Whether Honeywell's suppression and/or destruction of the contract documents offering to sell the invention of the '371 patent to Boeing, and its later attempts to block this information from being obtained from Boeing, its false and misleading discovery responses, and its submission of a belated and misleading declaration and improper testimony – all submitted to contradict documentary evidence, the '371 patent inventors' testimony, and Honeywell's 30(b)(6) witnesses'

2

testimony establishing an invalidating offer for sale – needlessly prolonged the litigation in bad-faith, rendering this case exceptional under *Octane*?

4.    Whether all these facts taken together – filing and maintaining this litigation despite its knowledge that it had offered the patented invention to Boeing, suppression of its on-sale activity and from the USPTO when filing the application leading to the '371 patent from defendants in this litigation, and submission of improper self-serving declarations and testimony regarding its on-sale activity – render this case exceptional under *Octane*?

## STATEMENT OF THE CASE

In 1990, the Boeing Co. ("Boeing") sent a request for proposal ("RFP") to Honeywell.  The proposal sought, among other things, a liquid crystal display ("LCD") that could be viewed from a wide angle in the cockpit of a plane.  Then current LCD's suffered from color distortion when they were centrally-positioned for viewing between the pilot and co-pilot.  Boeing wanted displays that could be viewed by both pilots from their seats without any visual interference.  Honeywell determined that "providing a directional diffuser with both a horizontal and a vertical component" (*i.e.*, a two-lens array) would solve this wide-angle viewing problem.  (A13180).

In June of 1990, Honeywell offered to sell to Boeing this two-lens array LCD in a four-volume sales proposal called the Airplane Information Management

3

System proposal ("AIMS Proposal").  (A13170).  Volume III is entitled "Technical Proposal & Plans" and Volume IV is entitled "Price Offering & Contractual Terms & Conditions."  (*Id.*)  Honeywell also built and demonstrated to Boeing prototype display units incorporating a directional diffuser using the claimed two-lens array.  (A13180-81.)

Two years later, on July 9, 1992, Honeywell filed a patent application covering the LCD containing the two-lens array it had demonstrated and offered to Boeing in 1990.  Honeywell knew that it had previously offered the claimed invention to Boeing, but never informed the USPTO of its sales activity.  (A13181-82.)  After the '371 patent issued in 1994, Honeywell sat on the patent for nearly a decade while the LCD industry expanded.

Beginning in 2004, Honeywell began filing suits against a broad swath of the LCD industry.  In three separate suits, Honeywell sued virtually the entire LCD industry naming over 60 manufacturer and customer defendants.  Over the course of two years, document discovery stalled while the parties sought to address procedural matters to determine how the various litigations should progress.  These suits were eventually combined and the litigation against customer defendants was stayed pending the outcome of the litigation against the manufacturer defendants, including Samsung and FUJI.  Meanwhile, Honeywell sought and collected

4

**[REDACTED]** settlements from many of the defendants on a patent Honeywell knew was invalid.  (A03386-3404.)

Not until 2006 (*i.e.*, nearly two years after filing) did Honeywell produce Volume III of its AIMS Proposal to Boeing.  Volume III referenced all four volumes of the proposal.  Volume I is entitled "Program Plans," Volume II is the "Management Summary," Volume III is the "Technical Proposal & Plans" and Volume IV consisted of the "Price Offering & Contractual Terms & Conditions." (A03420; A03423.)  Honeywell argued that Volume III and related documents established an early reduction to practice of the claimed invention by February 1990.  (A11645-47.)

Despite producing Volume III to establish a reduction to practice, Honeywell failed to produce any other volume of the AIMS Proposal.  When Samsung and FUJI sought production of the other volumes – and particularly Volume IV – Honeywell claimed that it could not locate Volume IV among the documents it had initially collected for discovery.  (A04774.)  Since Honeywell's first production effort purportedly did not uncover this critical document Samsung (and other defendants) requested that Honeywell conduct another search for Volume IV.  In response, however, Honeywell merely had its counsel re-review the same documents it had already collected, and then claimed that it had conducted an

"extensive" search for Volume IV.  But Honeywell did not conduct another search of its company files.

Exasperated by Honeywell's attempts to hide Volume IV from defendants, FUJI subpoenaed Volume IV from Boeing.  Boeing, however, objected to this discovery on the obvious grounds that the document should be available from Honeywell, a party to the litigation.  Accordingly, Samsung followed-up with Honeywell only to be stone-walled yet again.  (A04771.)  Honeywell responded that the subpoena to Boeing had failed to produce Volume IV and, therefore, Samsung's search for Volume IV was a waste of time.  (A04774.)  As the close of discovery approached, Samsung and FUJI continued to press Boeing and Honeywell to produce Volume IV.  Honeywell then represented that there was no evidence Volume IV existed or had ever been sent to Boeing.  (A03176-79.)  The absurdity of Honeywell's representations was confirmed when Boeing produced the document.

Volume IV of the AIMS Proposal was a "smoking gun" document that established Samsung and FUJI's on-sale bar defense.  Volume IV stated that the AIMS Proposal was "a firm fixed price proposal" and included firm and definite commitments regarding price and delivery.  (A13174-75.)  Denying the plain language of the suppressed document, Honeywell argued that Volume IV – entitled "Price Offering & Contractual Terms" – was not an offer.  The district court

6

rejected this argument, concluding that the language of Volume IV constituted a definite offer for sale as a matter of law. (A13179.)

Faced with Boeing's production of Volume IV, Honeywell argued that what it had offered for sale in the AIMS Proposal was not the invention claimed in the '371 patent. The district court found this argument "untenable" in light of the language of Volume III and the overwhelming documentary and testimonial evidence. (A13180-81.) The district court further found that Honeywell knew it had offered the claimed invention to Boeing. (A13181-82.)

After granting summary judgment that claim 3 of the '371 patent was invalid for violation of the on-sale bar, (A13183) the district court stayed consideration of Samsung's (and FUJI's) fee request while Honeywell appealed. This Court affirmed the district court's invalidity ruling in a *per curiam* opinion. (A13184a-c.)

Upon return to the district court, this case was assigned to Judge Stark because Judge Farnan had retired. Given the procedural posture of this assignment, Judge Stark had no history in the litigation, and thus had no background regarding the aspects of Honeywell's conduct that had made this case so exceptional. Applying a clear and convincing evidence standard, Judge Stark found that the case was not exceptional and denied the fee motions. (A00013.) This appeal followed.

## STATEMENT OF FACTS

### I.    BOEING SOUGHT COMPETITIVE BIDS TO DEVELOP AND DELIVER A DISPLAY UNIT FOR ITS COMMERCIAL PASSENGER AIRPLANE

In the late 1980's, Boeing was working on the 7J7-X project to develop what became the Boeing 777 commercial passenger airplane.  Boeing sought out companies to develop and deliver the various components necessary to build the Boeing 777, including a display unit for its cockpit.  (A10121 at 25:2–26:11.)  Specifically, Boeing was seeking a display unit that could provide the best cross-cockpit luminance: the display unit brightness had to be such that the captain and first officer could see each other's display unit in all flight deck lighting conditions.  (A10293-94 at 48:3–50:12.)

Boeing circulated a Request for Information ("RFI") to the industry inviting companies to develop a display unit with an appropriate luminance profile that allowed both pilots to read each other's displays.  (A10051 at 23:19–24:19.)  Honeywell responded with a general description of the display technology it proposed for solving Boeing's problem, a time schedule, and non-binding price estimates.  (A10052-53 at 26:1–30:5.)  Boeing reviewed the RFI responses, narrowed its search, and sent a Request for Proposal ("RFP") to Honeywell and a Honeywell competitor.  (A10051-53 at 23:19–30:5.)  In contrast to the RFI, the RFP required a much more detailed proposal.  (A10052 at 27:19–28:20.)

8

**A.    Honeywell Demonstrated, Contrary to its "Untenable" Position, The Claimed Two-Lens Array to Boeing.**

Now in the running for the lucrative Boeing AIMS contract, Honeywell knew that any competitive bid would have to address Boeing's cockpit luminance problem.  (A10121 at 25:2–26:11; A09729 at 50:17–52:20.)  With this knowledge, Honeywell set out to solve Boeing's problem in a research and development project that Honeywell coined the "directional diffuser project."  (A09722 at 21:2–23:7; A10354 at 96:6–13; A10121 at 25:2–26:11; A09729 at 50:17–52:20.)  The "directional diffuser" team consisted of several people including John Rupp, the Engineering Section Head, and Richard McCartney, Daniel Syroid, and Karen Jachimowicz, the named inventors of the '371 patent.  (A10343 at 51:22–52:17; A10121 at 25:2–26:11.)

**[REDACTED]**

On January 26, 1990, Honeywell set out to design and fabricate a display unit incorporating the two-lens embodiment so that it could physically "demonstrate" it to Boeing in May 1990.[2] (A11439; A09741 at 98:14-99:3.) Accordingly, Honeywell built a directional diffuser that had a wide horizontal viewing angle based upon the two-lens array embodiment.

By May 1990, Honeywell was preparing display units to show Boeing in an effort to help secure the AIMS project contract. Honeywell had settled on the two-lens array embodiment of the directional diffuser as the best way to provide the desired luminance profile. (A11676; A09750 at 134:4–23; A11643-47.) On May 14, 1990, after congratulating Jachimowicz and her team, McCartney remarked that the [**REDACTED**] and "we will want to put a full directional diffuser in [display units] #8, #9 and #10 now beginning fabrication[.]" (A11676; A09750 at 134:4–23, A11678-79.) He also instructed Jachimowicz to pull together the necessary raw materials and draft alignment instructions for the directional diffuser so that he could forward them to the fabricator. (*Id*.) Jachimowicz responded on May 21, 1990 with the following drawing entitled

**[REDACTED]**

_____

[2] Honeywell represented under penalty of perjury that the invention of claim 3 was reduced to practice by February of 1990. (A11645-47.)

**[REDACTED]**

(A11682.)

That same day, McCartney sent a letter and Jachimowicz's drawing to the fabricator requesting that it build "3 directional diffusers" as illustrated and that "[a] drawing is attached to show you the proper orientation that is required. . . . It is important that the lenses face exactly the way shown in the drawing."  (A11681-82.)

At McCartney's request, three identical directional diffusers were built according to the drawing above, embodying claim 3 and incorporated in display units #8, #9 and #10.  (A10184 at 279:18–25, A10190 at 303:10–16, A10207 at 369:10–370:5.)  Another internal Honeywell document dated June 1, 1990 confirms that the directional diffuser technology was implemented in display units #8 and #10 that month and that there was a "patent in process" on the technology.  (A11690.)

Honeywell's technical expert, Dr. Ian Lewin, reviewed this evidence in his expert report, and confirmed that display units #8, #9 and #10 were built with directional diffusers embodying claim 3:


**[REDACTED]**


(A15389.)  (Emphasis added.)

Robert Clark, Honeywell's Electronic Displays Engineering Department Manager, stated that McCartney considered this directional diffuser with two-lens arrays to be **[REDACTED]** (A09626 at 119:10–24) and McCartney conceded that this configuration was the only embodiment ever built.  (A10184 at 279:18–25.) McCartney testified that the directional diffuser in display units #8, #9 and #10, which embodied claim 3 (*see* A11643-47), was demonstrated to Boeing in (May 1990) before the AIMS Proposal was submitted.  (A10271 at 622:20–623:23.) Likewise, in a letter dated December 18, 1990, John Rupp, Honeywell's Engineering Section Head, stated that display unit #10 with the two-lens arrays had been tested by Boeing **[REDACTED]**  (A11714.)

Despite this overwhelming evidence, Honeywell later claimed that display units #8, #9 and #10 referred to in Volume III of the AIMS Proposal did not contain a two-lens array. The district court found this argument "untenable" and further found that Honeywell *knew* it had offered the two-lens array to Boeing. (A13180-81, A13181-82; A03700.)

### B.    Honeywell Commercially Offered The Directional Diffuser Technology to Boeing In Its AIMS Proposal.

In June 1990 – over two years before Honeywell filed the '371 patent application – Honeywell submitted the AIMS Proposal to Boeing. In the four volume AIMS Proposal, Honeywell offered to design and deliver the display units for Boeing's airplanes. Volume IV, entitled "Price Offering & Contractual Terms & Conditions," sets forth the parties' commercial obligations and includes an entire section entitled "Bidder's Offer." (A03196-97.) The Bidder's Offer section contains specific contractual terms covering all aspects of Honeywell and Boeing's performance. *Id.* As noted by the district court, the Bidders Offer states it "is a firm fixed price proposal" and provides detailed terms regarding deliverables and billing. (A13174-75; A03196-97.)

Both Boeing and Honeywell understood that the AIMS Proposal was a commercial offer. John Dwane, Honeywell's Commercial Flight Systems Group Vice President, included a "Statement of Management Commitment" letter at the front of Volume IV stating that Honeywell was committed to the AIMS project and

13

**[REDACTED]** (A03191.) Boeing's representative, Bruce Lind, testified that Boeing considered Honeywell's proposal as a sales offer that, once accepted, would obligate Honeywell to deliver the components that Boeing specified. (A10058 at 50:16–51:2.)

Darcel Ioli, Honeywell's Rule 30(b)(6) witness designated to testify regarding the Honeywell/Boeing contracts and contractual relationships, testified that the AIMS Proposal listed Honeywell's **[REDACTED]** (A09699 at 44:11–22.) When asked about the purpose of the AIMS Proposal, Ioli stated "[t]he purpose of the response to the proposal is the hopes of winning the business with Boeing." (A09694 at 23:23–24:3.) She further acknowledged that, while negotiations were expected, Boeing nonetheless could have accepted the AIMS Proposal as originally made. (A09697 at 34:6–12.)[3]

Despite repeated requests, Honeywell never produced Volume IV, and even went so far as to represent that there was no evidence Volume IV even existed or had ever been sent to Boeing. (A03177-80.) Once Boeing produced Volume IV

---

[3] Boeing accepted the AIMS Proposal in October 1990. The AIMS Contract was a "big deal" for Honeywell, remains in effect today, and at the time of filing in 2004 had generated **[REDACTED]** in revenue for Honeywell. (A11870, 1181-2; A11723-4, 11726.)

and testimony on it had been taken, the district court found that Volume IV of the

AIMS Proposal constituted a commercial offer to sell as a matter of law.  (A13179.)

## II.   HONEYWELL APPLIES FOR A PATENT ON THE CLAIMED TWO-LENS ARRAY WHILE WITHHOLDING ITS COMMERCIAL OFFER TO BOEING.

The patent application for the directional diffuser technology was being

prepared simultaneously with the AIMS Proposal. The proposal specifies that

Honeywell was seeking patent protection on the directional diffuser that was being

offered to Boeing.  (A03533.)


**[REDACTED]**


(A03533.)

McCartney, who worked on the AIMS Proposal and is a named inventor,

admitted that the '371 patent application **[REDACTED]** as Honeywell submitted

the AIMS Proposal.  (A10190 at 301:3–11.)  Volume III of the AIMS Proposal lists

the "applicable patents" being sought and references the directional diffuser

application as "No. A6213491."  (A03533.)  This attorney docket number

designates both the directional diffuser invention disclosure sheet ("IDS")[4]

---

[4] The IDS was produced only following an order compelling production (A14340-3;
A14353-5; A10701, 10706-12), and is redacted to remove information indicating
whether the invention has been offered for sale.  Moreover, the inventor's response
has been redacted (and/or left blank).  Also, the "Conception Date" and "Date First

15

(A05575) and the patent application submitted to the USPTO that resulted in the '371 patent. (A12287.)

Honeywell filed the '371 patent application on July 9, 1992. Accordingly, the critical date is July 9, 1991. In June 1990 (over one year before the critical date), Honeywell submitted the AIMS Proposal to Boeing offering to provide display units with two-lens arrays.[5] In October 1990 (nine months before the critical date), Boeing accepted Honeywell's offer and awarded Honeywell the AIMS contract for the 777 airplane. (A09695 at 25:23–24.)

Honeywell had a duty to inform the USPTO of its pre-critical date commercial activity involving the invention claimed in the '371 patent. There is no dispute that Honeywell failed to do so. Based upon the evidence of record, the district court found that "Honeywell knew that the double lens array was the assembly that provided the best results, that these double lens embodiments were offered to Boeing and tested by Boeing in the form of [display units] #8, #9 and #10, and that these [display units] had a 'patent in process' which eventually became claim 3 of the '371 patent." (A13181-82.) Thus, Honeywell knowingly

---

Model Built" fields are redacted and/or left blank. (*Compare* A05573 *with* A05575.) The original unredacted document has been withheld by Honeywell.

[5] The '371 patent describes moire in an LCD and teaches using "directional diffusers" containing lens arrays. (A00042-56, Fi. 7.)

suppressed invalidating evidence during its prosecution of the '371 application – an undeniable violation of its duty of candor to the USPTO.

### III.   HONEYWELL SUPPRESSED EVIDENCE OF ITS COMMERCIAL ACTIVITY DURING THE LITIGATION.

Honeywell produced Volume III of the AIMS Proposal to avoid invalidating prior art.  Samsung (and other defendants) identified U.S. Patent Nos. 5,161,041 and 5,050,946 as invalidating prior art having filing dates of April 26, 1990 and September 27, 1990, respectively.  (A03114.)  To overcome these references, Honeywell needed to establish an earlier reduction to practice date and produced technical documents related to its AIMS Proposal to establish a reduction to practice by February 1990.[6]

Honeywell faced a Hobson's choice – if it produced the entire AIMS Proposal to establish an early reduction to practice, it might avoid invalidity based on the specific prior art references identified in litigation, but risked invalidity based on the on-sale bar.  Honeywell charted a precarious course.  In 2006, it produced Volume III and related technical documents that established the early reduction to practice date.  Volume III was entitled "Technical Proposal and Plans" and contained technical information but no commercial terms.  Honeywell, however, withheld documents showing detailed contractual terms, such as Volume IV entitled "Price

---

[6] Honeywell relies on the evidence describing the directional diffuser configuration in display units #8, #9 and #10 from the AIMS Proposal to establish a reduction to practice for all elements of claim 3.  (*See* A11645-47.)

17

Offering & Contractual Terms & Conditions" thereby hoping to avoid clear and convincing evidence of an offer for sale.

Volume IV, referred to in Volume III, stood out like a sore thumb. Samsung and the other defendants attempted to obtain Volume IV from Honeywell, as well as the other missing volumes from the AIMS Proposal. Samsung and the other defendants explicitly requested all documents concerning actual or potential offers for sale of the invention or components of the invention – a request that unquestioningly included Volume IV.[7] Defendants followed up with explicit requests for Volumes I, II, and IV of the AIMS Proposal in depositions and in correspondence. (A04709-10; A4713-14.)

Honeywell claimed that the AIMS Proposal was an active contract that needed the highest levels of confidentiality, but also claimed that it was unable to locate Volume IV. (A03419; A04774; A16639-91.) Faced with this bizarre circumstance, defendants explicitly requested that Honeywell conduct another search for the missing volumes. (A08347-48; A04713-14.) But neither Honeywell nor its attorneys ever conducted a new search for Volume IV or the rest of the AIMS Proposal. Instead Honeywell had its counsel re-review the previously

---

[7] Samsung propounded a comprehensive series of document requests on April 10, 2006, that included, *inter alia,* express requests for "all documents relating to sales of products or services, *contracts to sell products or offer services, offers of products or services for sale, demonstrations of products or services.*" (A04782, A04793 (emphasis added).)

collected documents and then characterized this review as an "extensive" search. (A04764, A04771, A04774.)

However, Honeywell did not conduct an adequate search, whether "extensive" or not. Kurt Luther, Honeywell's 30(b)(6) witness designated to testify regarding Honeywell's search for and collection of documents, testified that he was *never* contacted by Honeywell's counsel to search for the missing volumes of the AIMS Proposal. (A10111 at 141:20-143:24.) Moreover, Luther, an experienced patent attorney, testified that his initial search focused on collecting documents from engineers, and that he did not see how Volume IV, entitled "Price Offering & Contractual Terms" would be relevant to the case because it did not relate to the technical features of the displays. (A10097 at 85:17-19; A10100-01 at 100:14-102:2.)

While faced with Honeywell's stone-walling, FUJI sought to subpoena Volume IV from Boeing. (A02330, A02340.) Boeing, with Honeywell's encouragement, was initially uncooperative and refused to produce Volume IV.

Samsung then renewed its request to Honeywell for "the missing volumes of the proposal that Honeywell made to Boeing." Samsung followed up on a prior letter that Honeywell's counsel, Stacie Oberts, had sent to Defendant Optrex wherein she addressed Luther's testimony and agreed "to undertake yet another investigation for the remaining volumes." (A04764-65.) Samsung's counsel

19

specifically asked whether "Honeywell completed this investigation and, if so, what were the results." (A04771.) Samsung's counsel also asked, "whether Honeywell's new reinvestigation merely consisted of another review of previously collected documents." (A04771.) Ignoring both of Samsung's explicit questions, Ms. Oberts responded:

> Frankly, I do not understand the purpose of your letter. I have set forth, *ad nauseum*, the extensive search Honeywell has undertaken for [the missing volumes.]

(A04774.)

She further stated that the document would <u>never</u> be found or produced and attempted to end the inquiry:

> The defendants subpoenaed Boeing itself to locate the document, and that turned out to be a wasted exercise. <u>I trust that we will receive no further correspondence on this issue, as there is nothing more that Honeywell could possibly do to locate the requested documents.</u>

(A04774 (emphasis added).)

Honeywell then represented that there was no record or evidence of Volume IV's existence. (A03177-80.) To this day, Honeywell has never explained how there could be no record or evidence of Volume IV when Volume III (which was produced by Honeywell) expressly references Volume IV. Nor has Honeywell ever explained how it could "innocently" lack a copy of Volume IV when at the same time Honeywell insists that the AIMS Proposal is a "live contract."

Despite Honeywell's complete lack of cooperation and its representations that Volume IV did not exist, Boeing - which considered the AIMS Proposal so important it kept its copy in its vault ((A08444-5; A10046-47, 10056; A08434) – ultimately produced Volume IV of the AIMS Proposal.  However, Samsung and FUJI did not receive this lengthy document until the eve of the close of fact discovery and just prior to the filing date for expert reports.  At this point Honeywell had already collected over **[REDACTED]** in settlements.  (A03387-3404.)

## IV.    THE DISTRICT COURT'S DECISION ON FEES.

Judge Stark's decision rested upon a clear and convincing standard and an improper assessment of the facts.  (A00009.)  As set forth in *Octane*, whether a case is exceptional should be determined under the preponderance of the evidence standard.   134 S.Ct. at 1758.

In reaching his decision, Judge Stark erroneously assessed key facts.  Judge Stark found that Honeywell had a colorable basis to believe that its patent would be found valid based upon an internal June 1989 IDS relied on by Honeywell's counsel during oral argument.  (A00010.)  In a sleight of hand, Honeywell's counsel focused the court on the 1989 IDS to demonstrate that it had a basis to believe the "claimed" invention had not been offered for sale, because inventor McCartney had indicated on the form that as of 1989 a single-lens array had not been offered for sale.

21

Judge Stark's explicit reliance on the 1989 IDS is clear error. The IDS was signed in June 1989 – three years before the '371 patent application was filed and *one year before the AIMS Proposal offering the invention to Boeing*. (A05573.) Judge Stark also failed to realize that the invention shown in the 1989 IDS is a single-lens array (and therefore lacks any rotation of one lens in front of another). (*Id.*) Thus, the IDS does not address the invention in claim 3 of the '371 patent.

In contrast, Honeywell never mentioned and Judge Stark failed to acknowledge a second IDS signed August 5, 1991 – 10 months before the '371 patent application. (A05575.) The 1991 IDS addressed the two-lens array in this case, *i.e.*, specifically for use in airplane cockpit LCD screens. (A05576, A05580.) Notably, however, the answer to the question whether the invention "ha[d] been published, offered for sale or disclosed to persons outside of Honeywell" is <u>*redacted*</u> in this later IDS. (A05775.)[8] Honeywell has never explained why the second IDS is redacted. Indeed, if the 1991 IDS had in fact stated that the claimed invention had never been offered for sale, Honeywell would have relied on that document at oral argument instead of the 1989 IDS. The only reasonable explanation for why this later IDS is redacted on this critical question is that the

---

[8] Also missing, is any information in the fields for "Conception Date" and "Date First Model Built" even though the interior of document describes the work on models. (A05775.)

22

information is negative for Honeywell.  Honeywell's failure to produce an unredacted copy should support an adverse inference.

Judge Stark also erroneously assessed a critical finding by Judge Farnan. After weighing all the evidence, Judge Farnan found that Honeywell's argument that it had not offered Boeing a two-lens array "untenable." (A13180-81.)  This finding was dispositive of the litigation, and was upheld on appeal. (A13184a-c.) But for Honeywell's failure to disclose to the USPTO that it had offered to sell the two-lens array to Boeing, the '371 patent would not have issued.  Had Honeywell's disclosure of the two-lens array to Boeing been properly considered in a pre-filing investigation, this suit would never have been filed.  Judge Stark acknowledges Judge Farnan's finding, but minimizes its significance. (A00010-11.)

Once Volume IV of the AIMS Proposal had been produced, the *only* argument Honeywell could muster to oppose defendants' on-sale bar defense was to deny it had offered a two-lens array to Boeing.  Judge Farnan not only found this argument "untenable," he further found that Honeywell *knew* this argument to be false because "Honeywell knew that the double lens array was the assembly that provided the best results, that these double lens embodiments were offered to Boeing and tested by Boeing in the form of [display units] #8, #9 and #10, and that these [display units] had a 'patent in process' which eventually became claim 3 of

the '371 patent."  (A13181-82; A11690.)  Judge Farnan's findings were upheld by this Court.  (A13184a-c.)

Judge Stark also erroneously relied on unsupported attorney argument to conclude that Honeywell looked repeatedly for Volume IV of the AIMS Proposal. This argument is not supported by the record or any admissible evidence.  There is no dispute that Volume IV exists – Boeing produced it.  Moreover, Honeywell represents that the **[REDACTED]** AIMS Proposal is a live contract.  (A16689-91 at ¶¶4-9.)  The only admissible evidence in the record merely supports that Honeywell conducted an inadequate search that failed to locate Volume IV.

Kurt Luther, the Honeywell in-house patent attorney who conducted the initial search, testified that he focused on contacting engineers for responsive documents (A10097 at 85:17-19) and stated that he did not see the missing volumes as relevant.

> Q.   Do you recall whether you conducted a search for these other volumes and books?
>
> A.   I don't believe we would have seen any of those other books as relevant.
>
> Q.   Okay.  Why is that?
>
> A.   It would not be likely to address the display technology which would be covered in the displays volume.
>
> Q.   [I[s it your understanding, then, that Volume IV "Price Offering & Contractual Terms & Conditions," did not relate to displays and was therefore [ ] not relevant?
>
> A.   I don't necessarily see how that would be relevant.

24

(A10100 at 100:14 – 101:20.)  Thus, there are no admissible facts from Honeywell witnesses with personal knowledge to show that Honeywell conducted even a reasonable search for Volume IV – never mind a diligent search.

Nor is there any admissible evidence that Honeywell conducted any new or additional searches for Volume IV.  When Samsung asked Ms. Oberts whether Honeywell had conducted a new search or merely re-reviewed its prior collection that had failed to uncover Volume IV (A04771), she refused to answer.  Ms. Oberts stated that she had explained Honeywell's extensive search "*ad nauseum*." (A04774.)  But Honeywell's prior explanation only stated that its counsel had "re-reviewed the documents that had been previously requested."  (A04764.)  Nowhere in the record is there any evidence showing that Honeywell conducted a new search of its facilities to locate the missing Volume IV.

Finally, Judge Stark speculated that Honeywell's production of Volume III, while failing to produce Volume IV, was mysterious but not sufficient to find an exceptional case under a clear and convincing standard.  (A00011.)  In addition to applying the wrong legal standard, Judge Stark's supposition ignores that Honeywell needed Volume III to support an early reduction to practice to overcome invalidating prior art (*see* pp. 17, *supra*), and that withholding Volume IV deprived defendants of clear and convincing evidence of an offer for sale.

25

Thus, the district court assessed Samsung's motion for fees under an incorrect legal standard, and clearly erred in its consideration of the facts.

## SUMMARY OF THE ARGUMENT

Under §285, an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane,* 134 S.Ct. at 1756. This case stands out from other patent cases on several levels.

Honeywell initiated and pursued this litigation in bad faith. The district court found that Honeywell knew that it had offered to sell the claimed invention to Boeing in violation of the on-sale bar. (A13180-82.) Furthermore, any reasonable pre-filing investigation would have revealed that the claimed invention had been offered for sale before the critical date. Every technical witness involved in the AIMS project knew that the claimed invention was offered to Boeing. The plain language in the AIMS Proposal also established Honeywell had offered the claimed invention to Boeing. (A03196-97; A03700.) Indeed, the mere mention in Volume III that Volume IV contained the "Price Offering & Contractual Terms & Conditions," at a minimum, should have put Honeywell on notice to locate and review Volume IV before filing suit. Nevertheless, Honeywell prosecuted this case asserting a patent the district court found it knew to be invalid and used that patent to improperly extract over **[REDACTED]** from the LCD industry.

Subsequently, to avoid a finding of invalidity Honeywell engaged in significant litigation misconduct.  Honeywell's own documents and witnesses overwhelmingly prove that Honeywell's patent was invalid for violation of the on-sale bar and Honeywell was well aware of this.  Nonetheless, Honeywell selectively produced Volume III of the AIMS Proposal, suppressing smoking gun evidence of its commercial activity found in Volume IV.  Even after Boeing disclosed Volume IV, the "smoking gun," Honeywell continued to prolong this case and drive up the cost of litigation by providing misleading discovery responses, submitting an improper declaration to the district court, and eliciting improper testimony in an attempt to avoid an invalidity finding for violation of the on-sale bar.[9]

Finally, Honeywell violated its duty of candor when it procured the '371 patent by withholding its commercial sales activity from the USPTO.  All three inventors knew the claimed invention was offered to Boeing.  Inventor McCartney was directly involved in drafting the AIMS Proposal that offered the claimed invention for sale and confirmed that a patent covering the invention was being pursued.  The district court found that Honeywell knew it had offered the patented invention for sale to Boeing before the critical date of the '371 patent, and knew that it was seeking a patent on that invention.  (A13181-82.)  This finding was not disturbed on appeal.  From the facts surrounding Honeywell's conduct it can be

_____
[9]This is discussed in detail in Argument Sections III.B & III.C *infra.*

easily inferred that Honeywell intentionally failed to disclose this information to the USPTO.

Importantly, the Court can find a case exceptional for conduct that does not rise to the level that is independently sanctionable. *Octane*, 134 S.Ct. at 1756. Moreover, in contrast to a finding of inequitable conduct under the clear and convincing standard, the Court can assess Honeywell's conduct to determine if this case is exceptional under a preponderance of the evidence standard. *Id*.

Any one of Honeywell's improper actions is sufficient to find this case exceptional. Taken together, Honeywell's conduct stands out from other patent cases supporting a finding of exceptionality.

## **ARGUMENT**

## I. **STANDARD OF LAW AND STANDARD OF REVIEW**

The Patent Act's fee shifting provision provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. §285. "[U]nder §285 the interest of the patentee in protecting his statutory rights is balanced by the interest of the public in confining such rights to their legal limits." *Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 810 (Fed. Cir. 1990).

In *Octane,* the Supreme Court explained that an "exceptional case"

> is simply one that stands out from others with respect to the
> substantive strength of a party's litigating position (considering

> both the governing law and the facts of the case) or the
> unreasonable manner in which the case was litigated.

134 S.Ct. at 1756.

The Court articulated a flexible inquiry based on the totality of the

circumstances.  It provided guidance on the factors to be applied by pointing to a

similar fee shifting provision of the Copyright Act, 17 U.S.C. §505.  The Court

explained that under that provision, courts consider a "nonexclusive" list of factors,

including "'frivolousness, motivation, objective unreasonableness (both in the

factual and legal components of the case) and the need in particular circumstances to

advance considerations of compensation and deterrence.' " *Id.* at 1756 n. 6 (quoting

*Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455

(1994)).  This articulation of a non-exclusive list of factors does not displace other

factors relevant to the inquiry, including "a determination of what pre-filing

preparation, if any, was done by" the plaintiff. *Superior Fireplace Co. v. Majestic*

*Prods. Co.,* 270 F.3d 1358, 1378 (Fed. Cir. 2001).  Finally, the Court replaced the

"clear and convincing" evidence standard, with a "preponderance of the evidence"

standard. *Octane,* 134 S.Ct. at 1758.

Judge Stark decided Samsung's and FUJI's motion for fees before the rulings

in *Octane*.  "A district court would necessarily abuse its discretion if it based its

ruling on an erroneous view of the law…." *Octane*, 134 S.Ct. at 1748, n.2. Ruling

under the old standard has the same effect as ruling on an erroneous view of the law.

*See also High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 49 F.3d 1551, 1558 (Fed. Cir. 1995).

This Court reviews factual findings related to a denial of attorney fees under an abuse of discretion, because the district court has "live[d] with the case over a prolonged period of time." *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, 134 S.Ct. at 1744 (2014). But here Judge Stark, who denied defendants' motion for fees, did <u>*not*</u> live with the case for any time prior to the motion for fees. Judge Farnan, who lived with the case and invalidated Honeywell's patent, retired prior to the filing of the defendants' motion for fees.

Judge Stark had the same paper record before him as is before this Court. When the decision below is "rendered exclusively on the basis of a 'paper' record, an appellate court is equally well-positioned as a trial judge to assess the evidence [and decide the] issue[s] *de novo. Shields v. Eli Lilly & Co.*, 895 F.2d 1463,1466 (D.C. Cir. 1990); *see also, Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 603 (D.C. Cir. 2001). Moreover, as the Court that has jurisdiction over all patent appeals, this Court, particularly with a three-judge panel, is in the best position to assess whether Honeywell's conduct in this litigation, more likely than not, "stands out" from other patent litigations. Thus, deference to Judge Stark's findings is not justified in this case.

## II.    HONEYWELL'S INFRINGEMENT CLAIM WAS BASELESS BECAUSE HONEYWELL KNEW CLAIM 3 WAS INVALID FOR HAVING BEEN OFFERED FOR SALE BEFORE THE CRITICAL DATE.

Where an issue is "not close," and the patentee continues to litigate, a finding of exceptional case and an award of attorney fees is justified.  *Interspiro USA, Inc. v. Figgie, Int'l Inc*., 18 F.3d 927, 933 (Fed. Cir. 1994) (affirming district court's finding of an exceptional case premised on court's determination that the question of infringement "was not close").  A case may be exceptional where the plaintiff's positions are objectively baseless, objectively unreasonable or litigated in bad faith – even if that conduct is not independently sanctionable.  *Octane Fitness*, 134 S.Ct. at 1756 n.9, 1757.  Here, the issue of invalidity was not close.[10]  Honeywell's opposition to the on-sale bar defense was frivolous.  Not only did the district court grant summary judgment of invalidity, it also found that Honeywell knew it had

---

[10] In addition to lacking a non-frivolous basis for opposing an on-sale bar defense, Honeywell also frivolously continued the case without sufficient evidence of infringement.  The district court held that to prove infringement, Honeywell needed to prove that the accused products met the element requiring  "slight misalignment" to reduce moire.  (A14907, 14919-20, 14921-22.)  Honeywell's expert, Dr. Ian Lewin, testified that the only way to reliably address this issue was to individually and physically examine the accused products to determine if moiré exists and, if so, determine the angle where it disappears.  (A09847 at 58:11-60:7, A09871 at 152:8-153:6, A09904 at 284:6-13, A09911 at 311:7-14.)  Honeywell, however, failed to conduct any tests whatsoever to establish that the lens arrays in the accused modules met the "slight misalignment" claim limitation.  (A09989 at 266:5- A09990 at 269:17.)  Thus, Honeywell never even attempted to collect sufficient evidence to prove infringement – it simply sought settlement and licensing fees on an invalid patent.

offered to sell the claimed invention to Boeing in the AIMS Proposal. (A13180-82.) This Court upheld those findings in a *per curiam* decision. (A13184a-c.)

The law regarding the on-sale bar was well established when Honeywell filed suit in 2004. Section 102(b) states that "[a] person shall be entitled to a patent unless . . . the invention was . . . on sale in this country more than one year prior to the date of application." To invalidate claim 3 under §102(b), two conditions must be satisfied prior to the July 9, 1991 critical date. First, the invention must be the subject of a commercial offer for sale. *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 67 (1998). "A single offer to sell is enough to bar patentability whether or not the offer is accepted." *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1311 (Fed. Cir. 1988). Thus, an offer to sell an embodiment of claim 3 is sufficient to invalidate the '371 patent. *Scaltech, Inc. v. Retec/Tetra, LLC,* 269 F.3d 1321, 1330 (Fed. Cir. 2001) (affirming summary judgment of invalidity due to the on-sale bar). Second, the invention must be ready for patenting. Proof of reduction to practice demonstrates that an invention is ready for patenting.[11] *See Pfaff,* 525 U.S. at 67; *Plumtree Software v. Datamize, LLC*, 473 F.3d 1152, 1161 (Fed. Cir. 2006).

Despite how well established the law is on §102(b), Honeywell relied on objectively baseless claims to oppose both prongs of the defense. An "objectively baseless" claim is one where "no reasonable litigant could reasonably expect

---

[11] Here, Honeywell stated under penalty of perjury that it had reduced the claimed invention to practice by February 1990.

32

success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.,* 726 F.3d 1306, 1327 (Fed.Cir.2013) (*quoting Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008) (internal quotations omitted)). Again, this was not a close case.

### A.    The District Court Found, and This Court Upheld, that the AIMS Proposal was a Commercial Offer for Sale As A Matter of Law.

The UCC defines an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1050 (Fed. Cir. 2001). This Court has instructed courts and litigants to look to the language used by the parties to determine whether an offer was intended:

> In any given circumstance, . . . what constitutes a definite offer, requires looking closely at the language of the proposal itself. Language suggesting a legal offer, such as "I offer" or "I promise" can be contrasted with language suggesting more preliminary negotiations, such as "I quote" or "are you interested." Differing phrases are evidence of differing intent, but no one phrase is necessarily controlling.

*Group One,* 254 F.3d at 1048. Here, Volume IV's title "Price Offering & Contractual Terms & Conditions," should have alerted Honeywell that it constitutes an offer.

Aside from the highly suggestive title of the AIMS Proposal, it is appropriate to consider whether "the quotation comes in reply to a specific request for an offer, contains language of commitment, or comes after prolonged negotiations, and the

quotation contains detailed terms." *Rhenalu v. Alcoa Inc.,* 224 F.Supp.2d 773, 802

(D. Del. 2002).  Here, Volume IV of the AIMS Proposal came in response to

Boeing's RFP (*i.e.*, request for proposal), and contained the following proposal

language showing commitment and detailed terms:

**[REDACTED]**

**[REDACTED]**

(A13174-75.)

Based upon this and other language from Volume IV, the district court found, "the AIMS Proposal contained the essential terms of an offer and Honeywell manifested its intent to make an offer to Boeing." (A13176.)  The district court further found that "the actual language of the AIMS Proposal … is sufficient, as a matter of law, to constitute a definite offer for sale."  (A13179.)  This Court did not disturb these findings on appeal.  (A13184a-c.)

Honeywell's argument to the district court, that Volume IV did not constitute an invalidating offer because in practice Boeing would seek to negotiate aspects of the offer (A13176), was a frivolous argument.  It is well established that acceptance of an offer is not required for an offer to be invalidating under §102(b).  *See Scaltech*, 269 F.3d at 1328.  Moreover, Honeywell and Boeing knew that the AIMS Proposal, as originally made, was an offer that Boeing could accept.  Honeywell's 30(b)(6) witness on this issue, Darcel Ioli, acknowledged this – despite multiple improper speaking objections by Honeywell's counsel.[12]  (A09696-97 at 31:3-34:12; A13176-77.)  Similarly, Boeing's 30(b)(6) witness, Bruce Lind, testified that Boeing considered Honeywell's proposal as an offer that, once accepted, would require Honeywell to develop and deliver the components

---

[12] These objections reveal that counsel knew Ioli's testimony would be damaging.

that Boeing specified.  (A10058 at 50:16–51:2.)  Thus, all parties to the transaction considered Honeywell's proposal to be a binding offer, leaving no reasonable basis for Honeywell to argue otherwise.  Honeywell's argument to the contrary was frivolous and unnecessarily prolonged the litigation.

The district court found that the AIMS Proposal was a binding offer to sell, this Court affirmed that finding, and Honeywell's and Boeing's witnesses support that finding.  Honeywell failed to present any good faith to the contrary or any reasonable explanation as to how it failed to figure this out prior to filing this lawsuit.

## B.   Honeywell Knew It Had Offered A Two-lens Array Embodying Claim 3 To Boeing.

Once Boeing produced Volume IV of the AIMS Proposal confirming an unquestionable offer to sell, Honeywell concocted yet another argument to avoid invalidity under the on-sale bar.  Honeywell argued that what was offered in the AIMS Proposal was not a two-lens array.  This argument was not only desperate, it was false.  The district court found that "Honeywell knew that the double lens array was the assembly that provided the best results [and] that these double lens embodiments were offered to Boeing and tested by Boeing in the form of [display units] #8, #9 and #10[.]"  (A13181-82 (emphasis added).)

The district court's finding was supported by overwhelming evidence.  The AIMS Proposal itself along with "memoranda, drawings, correspondence, and

testimony of witnesses" confirmed that Honeywell offered a display unit containing a directional diffuser embodying claim 3. Honeywell concedes as much by claiming reduction to practice of the claimed embodiment in A11681-82 **[REDACTED]** Furthermore, _all_ three of the '371 patent inventors, McCartney, Syroid and Jachimowicz, confirmed that a display unit containing the two-lens array embodiment was offered to Boeing. (A10271 at 622:20–623:20; A10356 at 103:20–104:10; A09741 at 98:14–99:8; A11643-47.) Indeed, McCartney personally instructed the fabricator to build a two-lens array matching the drawing prepared by Jachimowicz. (A11681-82; A09750 at 134:4–23.) McCartney further testified that **[REDACTED]** was the configuration that met Boeing's requirements, then we would have provided it." (A10271-72 at 624:19–625:6 (referring to A11681-82).)

Additionally, Honeywell's Engineering Section Head for Display Technology John Rupp stated that a display unit with the two-lens array was included in the sales offer to Boeing – it was Boeing's option to use or not use it. (A10294 at 50:13–51:12; A10321 at 157:21–23.) This was confirmed by Honeywell's technical expert, Dr. Lewin, who stated in his expert report that display units #8, #9 and #10 were built with a two-lens array embodying claim 3:

**[REDACTED]**

(A15389)

Thus, all three inventors, the Engineering Section Head for Display

Technology, and Honeywell's expert *all* testified that a display unit containing the

two-lens array embodying the claimed invention was offered to Boeing prior to the

July 9, 1991 critical date.  As the district court properly found (and this court

upheld) Honeywell knew that it had offered display units embodying claim 3 to

Boeing.  Given this knowledge, the language of the AIMS Proposal, and the

testimony by its own witnesses, Honeywell could not have had a good faith belief

that claim 3 of the '371 patent was valid.

### C.    <u>Honeywell Litigated Unreasonably and in Bad Faith.</u>

Even prior to *Octane*, this Court held that a case was exceptional and fee

shifting appropriate where plaintiffs "maintain[ed] litigation even though [they] had

knowledge of the invalidating prior use and sale[.]"  *Hughes v. Novi American, Inc.*,

724 F.2d 122, 124 (Fed. Cir. 1984); *Brasseler, U.S.A. I.L.P. v. Stryker Sales Corp.*,

267 F.3d 1370, 1382 (Fed. Cir. 2001) (failure to investigate potential on-sale bar

issue supports award of attorney fees).  Similarly, a suit is baseless or frivolous where the patentee knew, or on reasonable investigation, should have known that its patent was not valid.  *See e.g.*, *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990).

The evidence relied upon to prove the on-sale bar was in Honeywell's possession and control.  Here, any reasonable investigation – as required by F. R. Civ P. 11 – would have forced Honeywell to conclude that its patent was invalid for violation of the on-sale bar.  Inventors were actively involved in building display units for demonstration to Boeing.  McCartney was also involved in preparing the AIMS Proposal.  Honeywell had Volume III of the AIMS Proposal which explicitly mentions Display Units #8, 9 and 10.  Even a cursory review of the first five pages of this document would have revealed Volume IV entitled "Price Offering & Contractual Terms & Conditions."  (A03423.)  Any reasonable litigant reviewing the AIMS Proposal must conclude a suit cannot be filed without first reviewing Volume IV and, upon doing so, must also conclude that Volume IV, prepared in response to Boeing's RFP constitutes an offer for sale.  (A10051-53 at 23:19– 30:5.)

To explain away the obvious impact of the AIMS Proposal at oral argument before the district court, Honeywell made much of its purported inability to find Volume IV, and its counsel stated on the record that they had not seen the AIMS

39

Proposal before the case was filed and that the inventors had no knowledge of the offer to Boeing. (A00033 at 57:24-58:15.) Honeywell's conclusory argument is directly contrary to the district court's explicit findings that Honeywell *knew* it had offered the two-lens array to Boeing. (A13180-82; *see*, pp. 35-38 *supra*.) It also fails to explain why Honeywell did not obtain Volume IV from its business partner Boeing. Volume IV exists and the AIMS project is still an active contract. (A16689-91 at ¶¶4-9.)

Honeywell had knowledge of the facts invalidating the patent before it brought this action. Honeywell cannot claim that it was unaware of its invalidating commercial offer for sale because its employees, including the inventors, were involved in both the development of the two-lens array that led to the '371 patent and in the Boeing contract process. *See* pp. 36-38 *supra*. Honeywell's unsupported denials are just not believable. Any reasonable pre-filing investigation would have uncovered that Honeywell had offered to sell the two-lens array to Boeing. Either Honeywell failed to conduct an adequate pre-filing investigation, or it conducted the investigation and suppressed Volume IV of the AIMS Proposal. The district court found that "Honeywell knew … that the[] double lens embodiments were offered to Boeing[.]" (A13181.)

Assuming, for the sake of argument that Honeywell was unaware of its prior commercial activity (it cannot), Honeywell failed to assess whether its case was

still viable as "new" and/or suppressed evidence came to light. *See Taurus,* 726

F.3d at 1328 (stating that a party "must continually assess the soundness of pending

infringement claims" during the litigation). Once the defendants shed light on the

evidence of Honeywell's commercial activity, and its infringement position (*see* pp.

30-31, n.9, *supra*), Honeywell could not reasonably have expected to succeed on

the merits in the litigation.

As of September 6, 2007, Samsung and its co-defendants informed

Honeywell that they intended to rely on the AIMS Proposal to support an on-sale

bar defense. (A03125; A03137-39; A03151-54.) Rather than conduct a good faith

reassessment of its case, Honeywell decided to evade discovery on the issue. In

response to Samsung's explicit interrogatory request that it: "[s]tate all facts

supporting your contention that the AIMS Proposal was not an invalidating offer for

sale pursuant to 35 U.S.C. §102(b) . . . ," Honeywell merely stated that: 1) the '371

patent is presumed valid; 2) the AIMS Proposal does not constitute an offer for sale;

and 3) the AIMS Proposal was not an offer to sell the claimed invention. (A03166-

67.) This threadbare and conclusory response demonstrated Honeywell had no

legitimate basis to dispute the defense. Had Honeywell reasonably and in good faith

evaluated the defense and provided "all facts" supporting its contention, it would

have been evident there was absolutely no basis to defend the patent's validity.

Moreover, under the district court's findings, Honeywell's conclusory response to

this interrogatory was false and untenable.  (A13180-82.)   Based upon

overwhelming evidence from Honeywell's internal documents, employees and

witnesses, Honeywell's insistence on filing and maintaining this case justifies

finding this case exceptional.  *See Hughes*, 724 F.2d 122 (Fed. Cir. 1984.)

### D.    Honeywell Used This Lawsuit To Leverage An Invalid And Unenforceable Patent to Obtain Over [REDACTED] Dollars From The LCD Industry

In *Octane*, the Supreme Court pointed to the fee shifting provision from the

Copyright Act as potentially providing guidance on when a case is exceptional and

fees should be shifted to an unsuccessful plaintiff.  The "nonexclusive" list of

factors identified by the Supreme Court include "the need in particular

circumstances to advance considerations of compensation and deterrence." *Octane*,

134 S.Ct. at 1756 n 6.  Considerations of compensation and deterrence support an

award of fees in this case.

Honeywell's litigation was extraordinarily profitable.  It had already collected

more than **[REDACTED]** in lump sum settlement payments before it even

produced Volume III of the AIMS Proposal in 2006.  (A03387-3404.)  By the end of

the litigation, Honeywell had collected more than **[REDACTED]**from the LCD

industry on what proved to be an invalid (and likely an unenforceable) patent.  (*Id*.)

Even after Boeing produced Volume IV, Honeywell continued its aggressive

negotiation tactics.  It continued to assert that its patent was valid and infringed

42

during licensing negotiations with defendants, while simultaneously refusing to allow defendants' in-house counsel to review Volume IV.

There was no valid reason to insist that Volume IV be designated as outside counsel's eyes only. Volume IV did not contain technical information, and its pricing information was at least fifteen years out of date. Nevertheless, Honeywell's litigation counsel insisted that Volume IV was highly confidential and therefore, inaccessible to in-house counsel. Given these circumstances, Honeywell should not be able to argue that it acted in "good faith" because of settlements with other defendants where in-house counsel were unable to see the AIMS Proposal and assess the weakness of Honeywell's patent. Here, Honeywell's motivation, as well as considerations of compensation and deterrence all weigh in favor of fee shifting. Honeywell was motivated to assert its baseless claims, and to ignore the plain language of the AIMS Proposal by the extraordinary funds it was able to extract from the LCD industry. *Octane*, 134 S.Ct. at 1756 n. 6.

Honeywell is a Fortune 100 company with deep pockets, and significant experience as a patentee. Under 35 USC §285, the only way to deter Honeywell from seeking similar unjust enrichment in the future is an award of fees compensating Samsung and FUJI for their efforts that successfully removed Honeywell's invalid patent from the market. In doing so, defendants ended Honeywell's attempts to impose a lucrative toll on the rest of the LCD industry,

albeit after reaping **[REDACTED]**.  Honeywell's litigation was baseless and

unreasonable by more than a preponderance of the evidence, and a finding of

exceptionality and fee shifting is appropriate to deter Honeywell from similar

conduct in the future.

### III.    HONEYWELL ATTEMPTED TO SUPPRESS VOLUME IV OF THE AIMS PROPOSAL, OFFERED MISLEADING DISCOVERY RESPONSES, AND SUBMITTED FALSE DECLARATIONS

Even before the Supreme Court's decision in *Octane*, "[l]itigation misconduct

and unprofessional behavior were relevant to the award of attorney fees, and [could]

suffice to make a case exceptional under §285." *Sensonics, Inc. v. Aerosonic Corp.*,

81 F.3d 1566, 1574 (Fed. Cir. 1996).

Volume IV exists and, indeed, existed during this lawsuit.  If Honeywell

wanted to use the courts to enforce its patent to the tune of over**[REDACTED]**, then

it was incumbent upon Honeywell to comply with its obligations under the Federal

Rules to investigate the terms set forth in Volume IV.  Given the multitude of

people involved in the AIMS Project, there is no reasonable basis why it was not

located prior to litigation.  If Honeywell had acted reasonably and in good faith to

locate and produce Volume IV of the **[REDACTED]** AIMS Proposal it would at a

minimum have:

> (1) Determined that Volume IV in fact existed by discussing the matter with management in charge of and employees involved in the AIMS Proposal and/or management in charge of and employees implementing this "live" contract with Boeing;

(2) Determined which custodians were likely to have Volume IV (such as management responsible for the Boeing account and/or custodians of contract files) and searched their files;

(3) Cooperated with defendants in contacting its business partner, Boeing, to receive a copy[13]; and

(4) Reassessed its case in light of Volume IV.

Honeywell did none of these. Instead, Honeywell suppressed Volume IV, provided improper discovery responses, submitted a contradictory declaration, and elicited improper testimony. Such conduct justifies a finding that this case is exceptional and fee shifting is appropriate.

### A.    Honeywell Failure to Produce Volume IV and Attempted to Mislead the Parties Regarding Its Existence

Volume IV was critical to the district court's finding that Honeywell had violated the on-sale bar. (A13174-75, A13179.) The AIMS Proposal consisted of four volumes. Honeywell produced Volume III in August 2006.

Defendants explicitly requested the missing volumes, including Volume IV, at depositions and in correspondence. (A04709-10 (citing the inside cover of Volume III by Bates Number (HW016269) [A03422] and referring to the AIMS Proposal as the "Boeing report").) When Honeywell was not forthcoming, defendants deposed Kurt Luther, Honeywell's 30(b)(6) witness responsible for the search for and collection of documents.

---

[13] Honeywell requested that Boeing produce Volume IV to it before the defendants, confirming that if Honeywell had really wanted to obtain Volume IV it could have asked Boeing at any time. (A08441-45.)

On June 13, 2007, Luther explained the missing volumes by testifying that he had focused on collecting documents from engineers, (A10097), but, in any event, did not see how Volume IV was relevant because it would have contained Honeywell's "price offering and contractual terms and conditions" rather than technical information related to Honeywell's displays.  (A10100-01 at 100:14-102:2.)[14]

In light of Luther's testimony, on June 15, 2007, defendants immediately requested that Honeywell undertake a diligent search of the company files to locate Volumes I, II and IV of the AIMS Proposal.  (A04713-14.)  Honeywell, however, did not conduct a new search for the missing volumes or even specifically ask anyone to locate Volume IV.  In an attempt to feign cooperation, Honeywell sent a letter stating its attorneys had "re-reviewed the documents that been previously collected."  (A04764.)  Considering that Honeywell's initial document search had failed to turn up Volumes I, II or IV, it made no sense whatsoever to search the same set of documents to see if the missing volumes might miraculously appear. Common sense dictated that Honeywell needed to look elsewhere.

---

[14] Luther's testimony defies belief.  Luther is a registered patent attorney who practiced patent law for six years at the well-known IP firm Finnegan Henderson Farabow Garrett & Dunner.  (A10080 at 20:14-A10081 at 21:6.)  How Luther could not appreciate the relevance of a "Price Offering and Contractual Terms and Conditions" in the AIMS Proposal undermines any credibility he might have.

In addition, Honeywell stated that its litigation counsel had asked "former" Honeywell employees if they had copies of the missing volumes. (A04764.) Given that Honeywell has insisted that the AIMS Proposal was a live contract subject to the highest levels of confidentiality, the suggestion that an ex-employee would have a copy of the volumes is nonsensical.

Honeywell agreed to undertake another investigation for the missing volumes. (A04765.) Accordingly, Samsung followed up with Honeywell to see if it had actually conducted its promised new search or merely "another review of previously collected documents." In the event a new search was conducted, Samsung asked for the results of that search. (A04771.)

Honeywell could have easily answered the questions posed by Samsung. Instead, Honeywell's counsel Ms. Oberts stated that she did "not understand the purpose of [Samsung's] letter" and had set forth "*ad nauseum,* the extensive search that Honeywell ha[d] undertaken for [the missing volumes.]" (A04774.) But, nowhere on the record has anyone with personal knowledge ever stated that in fact a second search of Honeywell's facilities was actually conducted, what was searched, or the results of such a purported search. Rather, as shown above, Honeywell did not conduct an extensive search. Nor has Honeywell ever explained its refusal to go back and look again in its company files for the missing volumes.

Honeywell also stated that Volume IV would <u>never</u> be located and produced: "the defendants subpoenaed Boeing itself to locate the document, and that turned out to be a wasted exercise. <u>I trust that we will receive no further correspondence on this issue, as there is nothing more that Honeywell could possibly do to locate the requested documents</u>." (A04774.) This statement demonstrates Honeywell's intent to withhold the document. Honeywell could have made a reasonable and good faith search as it said it would do. It could also have reached out to Boeing – its business partner on the AIMS Contract – and asked for a copy. At best, Honeywell put its head in the sand.

In October of 2007, Honeywell represented that there was "no record or evidence that [Volume IV] exist[s] or [was] ever sent to Boeing." (A03178-79.) This representation was false. Shortly afterwards, in November, Boeing produced Volume IV. Honeywell's actions defy explanation given that it simultaneously took the position that the AIMS Proposal was a live contract with Boeing, but also took the position that Volume IV (the actual offering documents) does not exist and had never been provided to Boeing.

At oral argument, Honeywell's counsel represented to the district court that Honeywell had conducted a second search in July of 2007. (A00037 at 73:13-22.) This was untrue. For support Honeywell attorney Lueck cited paragraph 43 from a declaration submitted by attorney Woods. But that declaration does not state that

Mr. Luther conducted another search, nor what (if anything) was searched, nor when.  (*See* A05166-67.)  The declaration merely states that in June 2007, attorney Stacy Oberts wrote a letter stating Honeywell's counsel had re-reviewed the previously collected documents and that it would undertake another investigation for the missing volumes.  (*Id.*; A04764-65.)  Indeed, the Woods declaration relies on Ms. Oberts, the attorney who refused to provide Samsung an answer on this very issue.  Lueck's representations are in fact contrary to the Ms. Obert's letters from June and September 2007, and Mr. Luther's testimony.

Mr. Lueck also admitted to the Court that he had not reviewed the AIMS Proposal before Honeywell filed suit, but that he did not think it was particularly relevant, and that the inventors had no knowledge of the AIMS Proposal.  (A00033 at 58:9-14.)  But this is directly contrary to the findings of the district court.  (A13179-82.)   Honeywell never conducted a reasonable search for Volume IV despite defendants' explicit request for one of the most highly-relevant documents in the case.

## B.    Honeywell Falsely Denied Or Refused To Admit RFAs

Samsung propounded explicit requests for admission to flesh-out its on-sale bar defense and Honeywell's failure to disclose its commercial activity to the USPTO.  (A03171-75.)  Honeywell responded to these requests by denying facts that were true and by improperly refusing to admit or deny requests that would have

demonstrated the frivolous nature of its case.  (A03178-82 – Request Nos. 32–36,

38–40, 43.)  For example, Honeywell refused to admit that:

- It had presented the AIMS Proposal to Boeing.  (A03178 – Request No. 32.)

- The proposal included a volume entitled "Price Offering & Contractual Terms & Conditions."  (A03178-79 –Request No. 34.)

- The volume entitled "Price Offering & Contractual Terms & Conditions" contained actual terms and conditions.  (A03179-80 – Request No. 36.)

- The AIMS Proposal included a two-lens array.  (A03180 – Request No. 38.)

- The LCD in the AIMS Proposal was covered by claim 3 of the '371 patent.  (A03181-82 – Request Nos. 43.)

Honeywell's denials are remarkable.  For example, Honeywell refused to

admit that the AIMS Proposal was even presented to Boeing, despite the fact that

Boeing produced it from its files (demonstrating that Boeing had received the

document from Honeywell) and despite testimony from Honeywell's own witnesses

admitting that the AIMS Proposal was given to Boeing.  (A09628 at 125:19–

127:19.)  Honeywell had an obligation to make a good faith reasonable inquiry in

response to Samsung's discovery requests.  *Liafail, Inc. v. Learning 2000, Inc.*, 2003

WL 722199 at *3 (D.Del. 2003).  Honeywell failed that obligation.

All these facts, for which Samsung had requested admission, were found to be

true by the district court.  (A13174-75, A13180-82.)  If Honeywell had properly

admitted these facts it would have saved Samsung and the other defendants

significant time, effort and expense litigating the case.[15]  Moreover, if Honeywell

had properly investigated these facts, that investigation would have revealed that

Honeywell had no good faith response to defendants' on-sale bar defense.

In November 2007, Samsung requested that Honeywell update its responses

as required by the Federal Rules.  (A04809-12.)  Honeywell refused to do so – even

after Boeing produced Volume IV of the AIMS Proposal.  This forced Samsung to

incur the expense of proving these facts on summary judgment.  Honeywell's false

denials and improper non-responses further demonstrate Honeywell's bad faith

litigation tactics.

### C.    Honeywell Submitted an Improper Declaration and Improper Testimony To Obfuscate The Facts Supporting An On-Sale Bar

After Boeing produced Volume IV, Honeywell's witnesses provided damning

testimony proving that the AIMS Proposal constituted an offer for sale.  (A13180;

*see also* p. 38-39, *supra*.)  Darcell Ioli, Honeywell's 30(b)(6) witness on contracts

with Boeing, testified (over numerous blatant and improper speaking objections

from Honeywell's counsel) that the AIMS Proposal was an offer which Honeywell

wanted Boeing to accept on the original terms and conditions submitted with the

proposal.  (A09697 at 33:20–34:12.)  Similarly, Boeing's 30(b)(6) witness testified

that Boeing considered the proposal to be a binding offer.  (A10058 at 50:16–

51:2.)

---

[15] Admission of these facts would also have likely resulted in fewer defendants
settling with Honeywell.

Honeywell tried to negate such explicit evidence of an offer for sale by submitting an improper attorney-drafted declaration from Ioli, its 30(b)(6) witness, alleging that the AIMS Proposal was not an offer for sale because the practice in the airline industry was to negotiate terms after a proposal had been submitted (A03322 at ¶ 11). This practice is common to nearly every industry, and if Honeywell's position were correct it would effectively eliminate the on-sale bar. Ioli's declaration contradicted seven pages of terms and conditions in Volume IV of the AIMS Proposal, the testimony of Boeing's 30(b)(6) witness, and Ioli's prior testimony. Furthermore, Ioli's declaration was legally irrelevant because an offer need not be accepted to be invalidating. *See Scaltech*, 269 F.3d at 1328.

The district court properly saw through Honeywell's blatant attempt to insert irrelevant and contradictory testimony stating "even Honeywell's 30(b)(6) witness acknowledged that, while negotiations might be expected, Boeing could have accepted the offer as made." (A13176-77.)  This finding was upheld on appeal.

Similarly, Honeywell elicited improper testimony from inventor McCartney. Honeywell's internal documents showed that Honeywell had disclosed a directional diffuser with a two-lens array to Boeing. (*See* pages 9-13 *supra*.)  This was supported by testimony from Honeywell's Electronic Displays Engineering Department Manager and Honeywell's technical expert. (A09626 at 199:10-24; A10184 at 279:18-25.)  Likewise, inventor McCartney testified that a directional

diffuser with multiple lens arrays was offered in the AIMS Proposal.  (A10271 at 622:10-623:20 (discussing the drawing shown on p. 11 *supra*).)  McCartney's testimony was extremely damaging to Honeywell's case.

After this testimony was elicited, Honeywell's counsel met with McCartney and McCartney changed his position on redirect to say that Honeywell was not committing itself to providing a two-lens array directional diffuser to Boeing. (A10279 at 653:13-22.)  At best, McCartney's revised testimony contradicted his prior testimony and was not credible.  Indeed, the district court found that the "technical individuals [including inventor McCartney] from Honeywell involved in the Boeing project *all knew* that what was under consideration to meet Boeing's needs was the double lens array, and Honeywell's argument to the contrary suggesting a single-lens array is untenable[.]"  (A13180-81 (emphasis added).)  This Court upheld that finding.

It is one thing to seek clarification of a witness's prior testimony.  Here, however, Honeywell engaged in an extensive effort to elicit improper contradicting testimony utterly at odds with its own documents and the prior testimony of its own witnesses (including all three inventors and its technical expert).  This litigation misconduct was not focused on presenting the truth or the merits of the case, but on avoiding summary judgment and prolonging the litigation.

## IV. <u>HONEYWELL OBTAINED ITS PATENT BY CONCEALING ITS COMMERCIAL ACTIVITY FROM THE USPTO</u>

As the Supreme Court has clarified, a case may be exceptional for conduct that is not "independently sanctionable." *Octane*, 134 S.Ct. at 1756. Inequitable conduct is determined under a clear and convincing standard, while the "exceptional" nature of a case is determined under a preponderance of the evidence standard. *Id.* at 1757. Thus, conduct which may not be deemed independently sanctionable under an inequitable conduct inquiry, can still support a finding that a case is exceptional under a preponderance of the evidence standard.

Further, even before *Octane,* this Court had ruled that a district court retains independent jurisdiction over a prevailing party's request for attorney fees under §285 in order to make factual findings regarding allegations of inequitable conduct. *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 2008 U.S. Dist. LEXIS 54615, *11-13 (S.D.N.Y 2008) ("Finally, it would undermine the Court' soft-stated responsibility to evaluate the 'totality of the circumstances' in determining whether fees are warranted, if the court could not consider [the defendant's] inequitable conduct allegations." (internal citations omitted)). "This jurisdiction to award fees [also] encompasses the jurisdiction to make findings of inequitable conduct, even where the parties no longer maintain a justiciable claim under the federal patent laws." *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 2008 U.S. Dist.

LEXIS 54615, at *11 (S.D.N.Y. 2008).  Neither the district court nor this Court is foreclosed from considering Honeywell's failure to inform the USPTO of its commercial activity, merely because Judge Farnan granted summary judgment on separate grounds.  *See e.g., Brasseler*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) (affirming award of attorney fees on remand after affirmance of summary judgment of invalidity for on sale bar); *Paragon Podiatry Lab. V. KLM Labs*., 984 F.2d 1182, 1188 n. 6 (Fed. Cir. 1993) (The issue of inequitable conduct "is not mooted by our decision holding the patent invalid in view of KLM's motion for attorney fees."). Thus, inquiry into Honeywell's withholding of its commercial activity from the USPTO is appropriate.

This Court has repeatedly held that "the omission of sales made before the critical date is especially problematic."  *Dippin' Dots*, 476 F.3d at 1345-46; *Paragon*, 984 F.2d at 1189.  "Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the [USPTO]." *Paragon*, 984 F.2d at 1189.  "*The concealment of sales information can be particularly egregious because, unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing this information on his own*."  *Id*.  (emphasis added.)  Here, Honeywell's concealment of

its commercial offer to sell the claimed invention to Boeing supports a finding that this case is exceptional.

### A.   Honeywell Violated its Duty to Disclose Commercial Activity to the USPTO

Honeywell had an absolute "duty of candor and good faith" to disclose its commercial activity to the USPTO.  37 C.F.R. §156.  When the application leading to the '371 patent was filed, the regulations and guidelines for patent prosecution stated that inventors must be diligent in disclosing *any colorable* pre-filing sale, experimental use, or offer for sale because of the acknowledged difficulty for an examiner to learn of potential invalidating sales, offers for sale or uses from resources available at the USPTO.  The Manual of Patent Examining Procedures ("MPEP") stated "[i]t may be desirable to submit information about prior uses and sales *even if it appears that they may have been experimental, not involve the specifically claimed invention, or not encompass a completed invention*," expressly explaining that an applicant must disclose any potential sales, uses, or offers for sale of any colorable embodiment of the claimed invention. (A04649-62 (emphasis added); *see also Critikon v. Beckton Dickinson Vascular Access,* 120 F.3d 1253, 1257 (Fed. Cir. 1997); *Paragon,* 984 F.2d at 1193.)  "Close cases should be resolved by disclosure, not unilaterally by the applicant."  *LaBounty Mfg. v. U.S. Int'l Trade Comm'n.,* 958 F.2d 1066 (Fed. Cir. 1992).

56

This was not a close case. The AIMS Proposal contains *explicit terms* showing it is an offer for sale (A13179); so many Honeywell witnesses testified that the two-lens array was offered for sale that the district court found that Honeywell's technical individuals *all knew* the two-lens array was offered to Boeing (A13180); and the most recent and on point invention disclosure statement related to the technology is *redacted* in the section asking whether the invention had been offered for sale (A05575). The district court, found that Honeywell and the inventors "*knew* what was under consideration to Boeing's needs was the double lens array" and "*knew* ...that these [display units with the double lens array] had a 'patent in process' which eventually became claim 3 of the '371 patent." (A13181, A13182 (emphasis added).)

### B. Honeywell Intentionally Withheld Its Commercial Activity From The USPTO.

Intent is inferred from the facts and circumstances surrounding a patent applicant's overall conduct. *Paragon*, 984 F.2d at 1189. While a "smoking gun is not necessary to establish intent" (*id.*), here the AIMS Proposal was in fact a smoking gun that constituted a commercial offer to sell as a matter of law, and that identified a two-lens array covered by claim 3 as a deliverable. (A13179; A13181.) The AIMS Proposal is entitled "Proposal" and contains a "Bidder's Offer" setting out specific pricing and delivery information. (A03188; A03196-97; *see also* pp.

32-33 *supra*.)  This alone should have informed Honeywell that it needed to disclose this information to the USPTO.

There is also strong, even overwhelming, evidence of intent to deceive:

- Inventors Daniel Syroid, Richard McCartney, and Karen Jachimowicz were all involved in the Boeing project and executed an oath filed with the USPTO which explicitly set forth their duty of candor to the USPTO and their requirement to disclose information where "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent."  (A04664-66.; *see also* p. 35, *supra*.)

- Honeywell admits that two of the inventors, Syroid and McCartney, knew about the AIMS Proposal and did not disclose it to the USPTO. (A03182.)

- Inventor McCartney further admitted that he wrote the part of the AIMS technical volume related to the patented technology.  (A10269 at 615:18–616:13.)

- Honeywell's Patent Attorney, Dale Jepsen, testified that he knew the invention of the '371 patent was developed in connection with the 777 display offered to Boeing and that he had suspected that there may have been a prior art sale or offer for sale.  (A9817 at 94:22 – 96:8.)

- Honeywell's internal IDS for the '371 patent application is missing information regarding the conception date, when a model was built, and the box indicating whether it was offered for sale is either blank or redacted.  (A05575.)

Yet neither the inventors, the patent attorney, nor anyone else at Honeywell disclosed to the USPTO the Boeing project, the AIMS Proposal, or the executed Boeing/Honeywell contract – all of which were dated well before the critical date.[16]

---

[16] The inventors also withheld from the PTO a 1989 article by "Noda" (A03776-79) which describes methods for avoiding moire, even though all the inventors were aware of the article.  (A01117-23, n.4; A02243-45; A02264.)

The inventors and Honeywell's patent attorney withheld Honeywell's commercial activity from the USPTO.  This same pattern of misconduct, withholding material evidence, continued into this litigation.  Honeywell produced Volume III of the AIMS Proposal in this litigation, but failed to provide Volume IV.  Honeywell's 30(b)(6) witness, Kurt Luther, testified only to a limited search in which he categorized this smoking gun document as not relevant.  (A10101 at 101:7-20.)  Luther also confirmed that he was never specifically asked to conduct a search for Volume IV of the AIMS Proposal.  (A10111 at 142:19-143:1.)  When defendants asked Honeywell to conduct a new search specifically for the missing volumes, Honeywell re-reviewed the documents it had previously collected and refused to conduct a new search of its files.  Honeywell then argued that pressuring Boeing to produce Volume IV was a waste of time and that Samsung should stop seeking the missing document.  (A04774.)  Honeywell then falsely represented that Volume IV did not exist.  (A03177-80.)  This conduct strongly supports a finding of intent to withhold Volume IV from both defendants in this litigation and the USPTO.

### C.    Honeywell's Failure to Inform the USPTO of Its Commercial Activity Renders This Case Exceptional.

The district court found that Honeywell knew that it had offered a two-lens array to Boeing, and knew that it was preparing a patent application to cover this two-lens array.  (A13181-82.)  The district court further found that Honeywell's

commercial activity constituted an offer to sell as a matter of law based upon the detailed language of Volume IV. (A13179.) Honeywell's commercial activity was material and known to every technical individual involved in the AIMS Proposal. (A13180-81.) But neither Honeywell, the inventors, nor Honeywell's patent attorney disclosed the AIMS Proposal or any of Honeywell's commercial activity to the USPTO.

This conduct more than justifies a finding of exceptionality under the preponderance of the evidence standard set forth by the Supreme Court. This Court should not permit Honeywell, an experienced patent applicant and litigant, to walk away from this litigation having wrongfully extracted over **[REDACTED]** on an invalid patent from the LCD industry without at least ordering it to compensate Samsung for having to defend against a patent Honeywell knew was invalid and unenforceable.

## <u>CONCLUSION</u>

For the foregoing reasons this case stands out from other patent lawsuits. Samsung respectfully requests this Court reverse the district court's denial of its fee motion, hold that Honeywell's actions render this case exceptional, and award Samsung its reasonable attorney's fees to compensate it for its expenses in this litigation and to deter Honeywell from engaging in such conduct in the future.

Respectfully submitted,

Dated:  September 19, 2014

/s/*Stephen S. Korniczky*
Stephen S. Korniczky
SHEPPARD MULLIN RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, California 93120-2006
Tel:  (858) 720-8900
Fax:  (858) 509-3691
Counsel for Defendant-Appellants
    SAMSUNG DISPLAY CO., LTD.,
    SAMSUNG SDI AMERICA INC., and
    SAMSUNG SDI CO. LTD.

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | : : : : | C.A. No. 04-1337-LPS (Consolidated) |
| Plaintiffs, | : : | **FILED UNDER SEAL** |
| v. | : : | |
| NOKIA CORPORATION, *et al.*, | : : | |
| Defendants. | : : | |

Martin R. Lueck, Esquire, Matthew L. Woods, Esquire, Stacie E. Oberts, Esquire, Peter N. Surdo, Esquire, and Lauren E. Wood, Esquire of ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Minneapolis, MN.
Anthony A. Froio, Esquire and Rebecca MacDowell, Esquire, of ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Boston, MA.
Thomas C. Grimm, Esquire and Benjamin J. Schladweiler, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

 Attorneys for Plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties, Inc.

Lawrence Rosenthal, Esquire, Ian G. DiBernardo, Esquire, Matthew W. Siegal, Esquire, and Angie M. Hankins, Esquire of STROOCK & STROOCK & LAVAN LLP, New York, NY.
Philip A. Rovner, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.

 Attorneys for Defendants FUJIFILM Corp. and FUJIFILM U.S.A., Inc.

Stephen S. Korniczky, Esquire of SHEPPARD MULLIN RICHTER & HAMPTON LLP, San Diego, CA.
Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, DE.

 Attorneys for Defendants Samsung SDI Co., LTD and Samsung SDI America, Inc.

## MEMORANDUM OPINION

March 30, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are two motions: (1) the Restated Motion for Attorney Fees and Expenses (Docket Item ("D.I.") 1045 and, hereinafter, "Fuji's Award Motion") filed by defendants FUJIFILM Corp. and FUJIFILM U.S.A. Inc. (together, "Fuji"); and (2) the Restated Motion for Attorney Fees and Expenses (D.I. 1054 and, hereinafter, "Samsung's Award Motion"), filed by defendants Samsung SDI Co., LTD and Samsung SDI America, Inc. (together, "Samsung," and, with Fuji, the "Defendants").[1] For the reasons discussed below, the Court will deny Defendants' motions.

## I.    BACKGROUND

For purposes of these motions, the Court will not engage in a lengthy recital of the facts of the case. These parties have been litigating the patent-in-suit in this Court for approximately seven years, and their disputes, as well as those of other litigants, have generated numerous prior Court Opinions and Orders, as well as Special Master Reports and Recommendations. (*See, e.g.*, D.I. 119; D.I. 500; D.I. 515; D.I. 656; D.I. 712; D.I. 957; D.I. 958) For present purposes, a brief overview of the relevant background will suffice.

Beginning in October 2004, Honeywell International Inc. and Honeywell Intellectual Properties Inc. (together, "Honeywell" or "Plaintiffs") filed two patent infringement suits (C.A. Nos. 04-1337 and 04-1338) and, later, a third such action (C.A. No. 05-874). The cases, which were consolidated, allege infringement of United States Patent No. 5,280,371 ("the '371

---

[1]Fuji filed a joinder in which it incorporated by reference the arguments, papers and exhibits contained in the briefs of its co-defendant, Samsung (*see* D.I. 1062; D.I. 1101); Samsung likewise joined in Fuji's arguments (*see* D.I. 1055 at 1 n.1).

1

patent"),[2] which pertains to a liquid crystal display ("LCD") said to furnish enhanced brightness and clarity when compared with prior art LCDs, while simultaneously reducing undesirable "moiré" interference effects on the screen. (*See* D.I. 119 at 2; D.I. 500 at 1; D.I. 515 at 1)

The patent infringement cases were brought against over sixty defendants comprised of two groups: manufacturers of allegedly infringing LCD modules ("Manufacturer Defendants"), of which Fuji and Samsung are members, and manufacturers of end-products incorporating alleging infringing LCD modules ("Customer Defendants"). (*See* D.I. 515; D.I. 957)

Prior to this case being reassigned to the undersigned judge, the Honorable Joseph J. Farnan, Jr. granted a joint motion by Defendants for summary judgment of invalidity based upon the on-sale bar.[3] (D.I. 957; *Honeywell Int'l, Inc. v. Nikon Corp.*, 672 F. Supp. 2d 638 (D. Del. 2009) (hereinafter, the "Invalidity Opinion"))

As recounted by the Invalidity Opinion, Fuji and Samsung successfully asserted that Honeywell offered to sell an embodiment of the invention claimed in claim 3 of the '371 patent[4]

---

[2]The three cases were consolidated with a fourth matter, C.A. No. 04-1536. In that case, Optrex America, Inc. ("Optrex") sued Honeywell for a declaratory judgment that it did not infringe Honeywell's rights under the '371 patent and that the patent was invalid. (*See* D.I. 119; D.I. 357) Optrex and Plaintiffs later entered into a stipulation of dismissal, which was approved by the Court on November 26, 2008. (D.I. 492)

[3]The opinion did not address Defendants' best mode defense. (*See* D.I. 957 at 1 n.1)

[4]Claim 3 of the '371 patent provides:

3. A display apparatus comprising:

a light source;

a liquid crystal panel mounted adjacent to said light source for receiving light from said light source; and

2

to The Boeing Company ("Boeing"), more than one year before the July 9, 1992 filing date of the patent, in violation of the on-sale bar of 35 U.S.C. § 102(b). (*See* D.I. 957) Defendants argued that "in January 1990, Honeywell set out to create display units which incorporated the crossed lens array embodiment of a directional diffuser so that these units could be demonstrated to Boeing." (*Id.* at 4) Later, in June 1990, Honeywell submitted to Boeing the Aircraft Information Management System Proposal (the "AIMS Proposal") – a four-volume sales proposal, including, *inter alia*, a volume devoted to "Technical Proposal & Plans" (Volume III), as well as another volume entitled "Price Offering & Contractual Terms & Conditions" (Volume IV). (*See id.*)

In his Invalidity Opinion, Judge Farnan concluded the evidence established that Honeywell "submitted the AIMS Proposal in response to Boeing's June 1990 Request For Proposal." (*Id.* at 8) The Court determined that "Honeywell intended the AIMS Proposal to constitute a formal offer," as shown in the terms of the proposal regarding price and delivery as well as reflected in the Statement Of Management Commitment attached to the AIMS Proposal, wherein "Honeywell confirm[ed] its 'firm and total commitment to a successful, on-schedule AIMS Program.'" (*Id.* at 9) Judge Farnan noted that "acceptance is not required for a proposal to be considered a commercial offer of sale." (*Id.* at 10) He emphasized, instead, that "the focus

---

> first and second lens arrays, each having a plurality of individual
> lenslets, disposed between said light source and said liquid crystal
> panel for providing a predetermined variation with viewing angle
> of light transmission from said light source through said lens arrays
> and said liquid crystal panel, wherein at least one of said first and
> second lens arrays is rotated about an axis perpendicular to said
> liquid crystal panel in order to provide a slight misalignment
> between said lenslets and said liquid crystal panel.

(D.I. 1084, Decl. of Matthew L. Woods ("Woods Decl."), Ex. 1, '371 patent, col. 6, lines 27-42)

3

of the inquiry is whether the offer could have been made into a binding contract by formal acceptance," and "the fact that further negotiations might arise, or even be expected, does not preclude the AIMS Proposal from being an invalidating offer." (*Id.*) Based upon the actual language of the AIMS Proposal, the Court concluded that there was a "definite offer [for sale], capable of acceptance, in the contract sense, and such offers have always been sufficient to invoke the on-sale bar." (*Id.* at 12-13)

While Honeywell "concede[d] that the AIMS Proposal disclose[d] a directional diffuser as required generally by claim 3 of the '371 patent," Plaintiff argued, among other things, that the directional diffuser "d[id] not meet the precise limitations of claim 3, because it only disclose[d] a directional diffuser having one lens – and not the two lens arrays limitation of claim 3." (*Id.* at 14) The Court found, however, that Honeywell prepared three prototypes for Boeing to consider – all three of which "were demonstrated to Boeing and fabricated with two lens arrays." (*Id.*) The Court pointed out that "[t]he technical individuals from Honeywell involved in the Boeing project all knew that what was under consideration to meet Boeing's needs was the double lens array." (*Id.*) The Court found clear and convincing evidence that "the patented invention was the subject of a commercial offer of sale by Honeywell to Boeing." (*Id.* at 16) Judge Farnan further found that "Honeywell knew that the double lens array was the assembly that provided the best results, that these double lens embodiments were offered to Boeing and tested by Boeing in the form of DU#8, #9 and #10, and that these DUs had a 'patent in process' which eventually became claim 3 of the '371 Patent." (*Id.* at 15-16) Judge Farnan added that Honeywell's own admissions and supporting documentation regarding reduction to practice by May 1990 – both prior to the critical date and prior to the submission of the AIMS Proposal to Boeing –

4

demonstrate that the invention was ready for patenting. (*See id.* at 16)

Honeywell filed an appeal. Subsequently, the Federal Circuit affirmed Judge Farnan's Invalidity Opinion, per curiam and without opinion. (*See* D.I. 1018)

Defendants filed their respective Award Motions for attorneys fees, costs, and expenses incurred in connection with the defense of Honeywell's infringement claim, pursuant to Rules 37 and 54 (d)(2) of the Federal Rules of Civil Procedure, District of Delaware Local Rule 54.1, 28 U.S.C. § 1927, 35 U.S.C. § 285, and this Court's inherent authority.[5] Specifically, as a result of the Invalidity Opinion, Fuji seeks approximately ▇Redacted▇ in fees, and Samsung seeks over ▇Red▇ ▇Redac▇ (*See* D.I. 1055 at 25; D.I. 1046 at 24; D.I. 1084 at ¶ 102; *see also* D.I. 1096; D.I. 1099) Defendants assert this matter meets the "exceptional" case standard pursuant to 35 U.S.C. § 285. (*See generally* D.I. 1046; D.I. 1055; D.I. 1096; D.I. 1099)

The Court heard argument on December 20, 2011 (*see* Transcript of December 20, 2011 hearing (D.I. 1125) (hereinafter "Tr.")).[6]

## II.    PARTIES' CONTENTIONS

Defendants contend that:

> [While] Honeywell [allegedly] did not know (and never found out over six years of litigation and appeal) that it had offered to sell the patented technology to [Boeing], more than a year before the application for [the '371 patent] was filed . . . the uncontested

---

[5]Defendants urge that "[a] district court may invoke its inherent power to impose sanctions in the form of expert fees or costs beyond what is provided for by statute," particularly "in cases involving bad faith that cannot otherwise be reached by rules or statute[s]." (D.I. 1055 at 24 (citing *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008)); *see also id.* at 25)

[6]The Court also received and reviewed several post-hearing submissions. (*See* D.I. 1118, 1119, 1120, 1123, 1126)

> facts, combined with Judge Farnan's findings (affirmed on appeal,
> *per curiam* and without opinion), clearly establish that,
> [Defendants are] entitled to recover [their] attorney fees and
> expenses [they were] forced to incur in defending . . . against
> Honeywell's more than six years of vexatious, bad faith litigation
> over an invalid patent, obtained through inequitable conduct,
> which . . . [economically benefitted it] along the way.

(D.I. 1096 at 1) Thus, Defendants present three bases for recovering their attorney fees:

(1) Honeywell's frivolous and vexatious assertion of its infringement suit with knowledge of its

invalidating offer for sale; (2) Honeywell's bad faith litigation tactics; and (3) inequitable

conduct before the U.S. Patent & Trademark Office ("PTO") in obtaining the patent-in-suit. *(See*

D.I. 1046 at 1-2; D.I. 1055 at 1-3; D.I. 1096 at 1, 12-15; D.I. 1099 at 1)

First, Defendants assert this Court should require Honeywell to pay Defendants' attorney

fees incurred as a result of Honeywell "unreasonably and vexatiously" lengthening the litigation.

*See* 28 U.S.C. § 1927; D.I. 1099 at 14. In Defendants' view, Honeywell "pressed the suit, even

after the on sale bar was brought to its attention." (D.I. 1096 at 1; *see id.* at 14)

Defendants also argue that Honeywell's failure to disclose the Boeing project and AIMS

Proposal to the PTO, as well as its failures to obtain Volume IV of the AIMS Proposal, was in

bad faith. *(See generally* D.I. 1046; D.I. 1055; D.I. 1096; 1099) To Defendants, Honeywell's

"purely technical arguments that the AIMS Proposal was not an invalidating offer for sale and

that the invention embodied in claim 3 of the '371 Patent was not disclosed in the AIMS

documents" were litigated and rejected on summary judgment and again on appeal; they do not

justify Honeywell's failure to disclose the AIMS Proposal. (D.I. 1099 at 8) Defendants

conclude, "The decision not to disclose this information to the PTO yields a very strong inference

of intent to mislead." *(Id.)*

6

Defendants further contend that Honeywell committed inequitable conduct by failing to disclose the Noda Reference[7] – a purportedly highly material prior art reference on the issue of moiré avoidance by pitch selection – which was known to Honeywell and should have been disclosed to the PTO. (*See* D.I. 1046 at 18-20; D.I. 1055 at 10-11; D.I. 1096 at 12; D.I. 1099 at 5-6)

Plaintiffs counter Defendants' arguments by contending that while Defendants prevailed on one issue, their success does not make this case "exceptional." (*See* D.I. 1083) In particular, Plaintiffs assert there is no record to support bad faith, litigation misconduct, or inequitable conduct; moreover, "the issue of inequitable conduct is not amenable to a fees request in this case because the issue has never been heard or decided (and in many respects, was never even alleged prior to the Defendants' requests for fees)." (D.I. 1110 at 1; *see also* D.I. 1083 at 1, 10, 14, 16, 30-35)

Defendants reply that "[t]he timing of when the on sale bar arguments appeared in Samsung's case preparation is simply a function of the way in which a large volume of information, correspondence, work product, and expert and attorney analysis was organized and compiled – not an indication of how strong Samsung believed the on sale bar defense to be." (D.I. 1099 at 9) In explaining why it did not file a motion for summary judgment on inequitable conduct, Samsung responds that it only "needed ***one*** of its dispositive motions to be granted and made a prudent decision to conserve resources, rather than file a motion on every possible issue." (*Id.*; *see also* D.I. 1046 at 10-11; D.I. 1096 at 5) Defendants add that their assertion of

---

[7]The "Noda reference" is a publication written by H. Noda, entitled "High Definition Liquid Crystal Projection TV," published in *Japan Display* in 1989. (D.I. 1055 at 1, 10)

7

inequitable conduct is timely, insisting that "[a]fter the entry of judgment, the district court

retains jurisdiction to determine a motion for attorney fees under 35 U.S.C. 285 and to make

findings of inequitable conduct *whether or not there is a pending defense or counterclaim of*

*inequitable conduct.*" (D.I. 1099 at 10; *see id.* at 12; *see also* D.I. 1096 at 8-10)  Defendants

further assert that a request for attorney fees as prevailing parties, whether or not included in their

pleadings, is appropriate, and there has been no waiver. (*See* D.I. 1099 at 12-13)

### III.    LEGAL STANDARDS

In patent cases, reasonable attorney fees may be awarded to prevailing parties if the case

is declared "exceptional." 35 U.S.C. § 285. Shifting attorney fees is discretionary. *See*

*Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712–13 (Fed. Cir. 1983). The prevailing party

must prove a case is exceptional by clear and convincing evidence. *See Forest Labs., Inc. v.*

*Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).

"The prevailing party may prove the existence of an exceptional case by showing:

inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise

bad faith litigation; a frivolous suit or willful infringement.*" Leviton Mfg. Co., Inc. v. Universal*

*Sec. Instruments, Inc.*, 606 F.3d 1353, 1358 (Fed. Cir. 2010) (internal quotation marks omitted).

"Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees,

and may [alone] suffice to make a case exceptional." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d

1566, 1574 (Fed. Cir. 1996). The Federal Circuit has cautioned that an award of attorney fees

under § 285 is not intended to be an "ordinary thing in patent suits," but instead should be limited

to circumstances in which it is necessary to prevent "a gross injustice," particularly in cases of

bad faith patent procurement or litigation. *See Forest Labs.*, 339 F.3d at 1329 (internal quotation

8

marks omitted).

## IV.    DISCUSSION

The Court will not order Honeywell to pay Defendants' attorney fees under Section 285 (or any other basis). Defendants have not proven by clear and convincing evidence that the present action rises to the level of "exceptional."

### A.    The Court is not persuaded that Honeywell brought, maintained, or litigated this case in bad faith or vexatiously.

Defendants have presented no evidence that Honeywell failed to consider the validity of the '371 patent prior to suit. Additionally, after Defendants made allegations of invalidity due to the AIMS offer for sale, Honeywell investigated, and continued to have a colorable basis to believe that the patent would be found valid. (*See, e.g.,* D.I. 1084, Woods Decl., Ex. 14 (Invention Disclosure Sheet); D.I. 1118 (same); *see also* Tr. at 56-59) While Judge Farnan found, on summary judgment, invalidity due to the on-sale bar, there is no indication from his opinion that he felt Honeywell's position was frivolous or outrageous. All Defendants can point to is that Judge Farnan granted summary judgment and that he used the word "untenable" in describing Honeywell's contentions. (*See* Tr. at 20; D.I. 957 at 14-15 ("The technical individuals from Honeywell involved in the Boeing project all knew that what was under consideration to meet Boeing's needs was the double lens array and Honeywell's argument to the contrary suggesting a single lens array is untenable in light of this evidence.")) As Defendants concede, even this sentence was a very "specific reference to the issue of the one or two [] lens array versions [] being offered" (Tr. at 21); it was not, in the Court's view, a blanket statement as to

9

A00010

Honeywell's entire case.[8]

Honeywell's failure to find a copy of Volume IV of the AIMS Proposal is mysterious, but the odd conspiracy alleged by Defendants – that Honeywell and its litigation team intentionally hid Volume IV by producing Volume III,[9] which expressly references Volume IV, and failed to explain the conspiracy to Boeing, which eventually produced Volume IV – is far from proven.[10]

Nothing else that occurred during this plainly contentious and long-running litigation sinks to the level of misconduct meriting an award of attorney fees, particularly as Defendants never moved to compel discovery, or requested sanctions during discovery. (*See* Tr. at 7, 11-12)

**B.    Even assuming applicants engaged in inequitable conduct before the PTO, this case is not "exceptional" for purposes of awarding attorney fees.**

Defendants contend that the patent applicants engaged in inequitable conduct by not

---

[8]Judge Farnan's analysis of whether the AIMS Proposal constituted an invalidating offer for sale of the patented invention stretches to ten pages and notes the context- and circumstance-specific nature of the relevant inquiries. (*See* D.I. 957 at 7 ("In addition to the language used by the parties, it is also appropriate to consider the circumstances surrounding the making of the offer, including the context of any prior communications or course of dealing between the parties; whether the communication was private or made to the general public; whether the communication comes in reply to a specific request for an offer; and whether the communication contains detailed terms."), 14 ("Honeywell's argument ignores the ***totality of the evidence*** presented.") (emphasis added))

[9](*See* D.I. 1084, Woods Decl., ¶ 24 ("Within this initial production, Honeywell produced Volume III of the AIMS Proposal. Volume III contained a cover sheet disclosing the 'Proposal Architecture' of Honeywell's response to Boeing's RFP. Exhibit 20 at HW016269-270. This cover sheet explicitly discloses the existence of Volume IV, and its title, 'Price Offering and Contractual Terms and Conditions.'"))

[10]Honeywell looked repeatedly for Volume IV. When "an additional search for AIMS documentation" was requested of it, Honeywell "agreed to undertake yet another search, writing [that] . . . 'we will undertake yet another investigation for the remaining volumes of the Boeing report.' That search did not locate Volume IV." (D.I. 1084, Woods Decl., ¶ 43; *see also* D.I. 1085 Ex. 40)

A00011

disclosing to the PTO either the AIMS offer for sale or the Noda reference. However, as acknowledged by all parties, there has been no finding of inequitable conduct by the Court. (*See* D.I. 1084, Woods Decl., ¶ 86; Tr. at 32, 49, 65, 67) Even assuming the applicants knew of the AIMS offer, they had a colorable, not objectively baseless basis for believing it was not an invalidating offer for sale. Further, the applicants appear to have had a colorable basis to believe the Noda reference was cumulative, given the projection art that was already in front of the PTO Examiner. (*See* D.I. 1084, Woods Decl., ¶ 87; D.I. 1086, Woods Decl., Ex. 73; Tr. at 49, 69-71)[11]

In any event, even assuming the applicants engaged in inequitable conduct, it does not automatically follow that this case is "exceptional." *See Gardco Mfg., Inc., v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("[I]t has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as 'exceptional.'") The Court does not find Defendants have proven this case is exceptional.

### C.    Exercising its discretion, the Court finds attorney fees are not merited.

Finally, exercising its discretion, the Court finds that attorney fees are not merited. This is a case in which dozens of alleged infringers – sophisticated parties all – settled with

---

[11]Given the Court's conclusions, it is not necessary to determine if Defendants' inequitable conduct contentions are timely. The Court notes, however, it is troubling to be asked at this late stage to make a determination of inequitable conduct, when Defendants passed on the opportunity for an inequitable conduct trial at a time Honeywell and Judge Farnan appear to have been ready for such a trial. (*See* D.I. 931; D.I. 933; D.I. 951; *see also* Tr. at 67-69, 72; D.I. 1118) Nor does it appear that all necessary discovery on inequitable conduct – such as asking the inventors if they knew their invention had been offered for sale, as opposed to demonstrated or presented (*see, e.g.,* Tr. at 63-64, 68-69; D.I. 1118) – has been completed.

11

Honeywell, for approximately ▆▆Redacted▆▆ in licensing fees. (*See* D.I. 1055 at 24; D.I. 1099 at

15; D.I. 1084, Woods Decl., ¶ 28; D.I. 1052, Decl. of Angie M. Hankins ("Hankins Decl."), Ex.

14)  Although many of these settlements occurred relatively early in the case, and prior to

Honeywell's production of discovery, ▆▆▆▆▆▆▆▆▆▆Redacted▆▆▆▆▆▆▆▆▆▆

even after Honeywell had produced in discovery almost everything on which the Court relied in

invalidating the patent. (*See* D.I. 1099 at 2; D.I. 1083 at 24; Tr. at 10)  At least ten licenses were

entered into after Honeywell's August 2006 production of AIMS-related documents. (*See* D.I.

1083 at 8, 24; D.I. 1084, Woods Decl., ¶ 28)  Indeed, Defendant Optrex, which evidently was

taking the lead on crafting the offer for sale invalidity defense and had been pursuing additional

AIMS documentation, settled with Honeywell ▆▆▆▆Redacted▆▆▆▆ in October 2008.

(*See* D.I. 1084, Woods Decl., ¶¶ 36, 58, 96, 98; *see also* Tr. at 57; D.I. 1083 at 8)  In this context,

the Court remains unpersuaded that this case was frivolous or vexatious, or either filed or

litigated in bad faith.  To the contrary, the numerous licenses entered into by accused infringers

over the course of this litigation provided a basis for Honeywell's good faith pursuit of the case.

*See generally Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1298 (Fed. Cir. 2004).[12]

## V.    CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Award Motions.  A

separate Order, consistent with this Memorandum Opinion, will be entered.

---

[12]Given the Court's conclusions, it is not necessary to determine whether Samsung's
Motion should be dismissed for any of the reasons offered by Honeywell. (*See* D.I. 1083)  Nor
need the Court analyze the specific fee requests made by Fuji and Samsung.  However, consistent
with D. Del. LR 54.1, the Clerk of Court will review Defendants' bill of costs. (*See also* D.I.
1025, D.I. 1027, D.I. 1038; D.I. 1040, D.I. 1119)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., | : : : |
| Plaintiffs, | : : |
| v. | : : |
| NOKIA CORPORATION, *et al.*, | : C.A. No. 04-1337-LPS : (Consolidated) |
| Defendants. | : : |

**ORDER**

At Wilmington this 30th day of March 2012:

For the reasons set forth in the Memorandum Opinion issued this same date,

IT IS HEREBY ORDERED that:

1.    The Restated Motion for Attorney Fees and Expenses (D.I. 1045), filed by defendants FUJIFILM Corp. and FUJIFILM U.S.A. Inc., is **DENIED**.

2.    The Restated Motion for Attorney Fees and Expenses (D.I. 1054), filed by defendants Samsung SDI Co., LTD and Samsung SDI America, Inc., is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

I hereby certify that, on this the 19th day of September, 2014, I electronically

filed the foregoing Confidential Opening Appeal Brief of Defendant-Appellants

SAMSUNG SDI AMERICA INC., and SAMSUNG SDI CO. LTD. with the Clerk

of the Court using the CM/ECF System, which will send notice of such filing to the

following registered users:

| | |
|---|---|
| Martin R. Lueck | Attorneys for Plaintiffs-Appellants |
| Matthew L. Woods | Honeywell International Inc. and |
| Stacie E. Oberts | Honeywell Intellectual Properties, Inc. |
| ROBINS KAPLAN MILLER & CIRESI LLP | |
| 2800 LaSalle Plaza | |
| 800 LaSalle Avenue | |
| Minneapolis, Minnesota 55402 | |
| Telephone: (612) 349-8500 | |
| | |
| Matthew W. Siegal | Attorneys for Defendants-Appellants |
| Angie M. Hankins | FUJIFILM Corporation |
| Lawrence Rosenthal | FUJIFILM North America Corporation |
| STROOCK & STROOCK & LAVAN LLP | |
| 180 Maiden Lane | |
| New York, New York 10038 | |
| Tel: (212) 806-5400 | |

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with Federal Express for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service was performed in accordance with the instructions given to me by counsel in this case.

Dated: September 19, 2014

/s/ Amy Mertens
Amy Mertens
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
Telephone: (858) 720-7900

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a) TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 13,616 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003, using 14 point Times New Roman font.

Dated:  September 19, 2014

SHEPPARD MULLIN RICHTER & HAMPTON LLP

/s/ *Stephen S. Korniczky*
Stephen S. Korniczky

Attorneys for Defendant-Appellants
Samsung Display Co., Ltd.,
Samsung SDI America, Inc. and
Samsung SDI Co., Ltd.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this the 19th day of September, 2014, I electronically

filed the foregoing Confidential Opening Appeal Brief of Defendant-Appellants

SAMSUNG SDI AMERICA INC., and SAMSUNG SDI CO. LTD. with the Clerk

of the Court using the CM/ECF System, which will send notice of such filing to the

following registered users:

| | |
|---|---|
| Martin R. Lueck | Attorneys for Plaintiffs-Appellants |
| Matthew L. Woods | Honeywell International Inc. and |
| Stacie E. Oberts | Honeywell Intellectual Properties, Inc. |
| ROBINS KAPLAN MILLER & CIRESI LLP | |
| 2800 LaSalle Plaza | |
| 800 LaSalle Avenue | |
| Minneapolis, Minnesota 55402 | |
| Telephone:  (612) 349-8500 | |
| | |
| Matthew W. Siegal | Attorneys for Defendants-Appellants |
| Angie M. Hankins | FUJIFILM Corporation |
| Lawrence Rosenthal | FUJIFILM North America Corporation |
| STROOCK & STROOCK & LAVAN LLP | |
| 180 Maiden Lane | |
| New York, New York 10038 | |
| Tel:  (212) 806-5400 | |

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with Federal Express for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service was performed in accordance with the instructions given to me by counsel in this case.


Dated:  September 19, 2014

/s/ Amy Mertens
Amy Mertens
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
Telephone:  (858) 720-7900

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a) TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 13,616 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003, using 14 point Times New Roman font.

Dated:  September 19, 2014

SHEPPARD MULLIN RICHTER & HAMPTON LLP

/s/*Stephen S. Korniczky*
Stephen S. Korniczky

Attorneys for Defendant-Appellants
Samsung Display Co., Ltd.,
Samsung SDI America, Inc. and
Samsung SDI Co., Ltd.